### HAYES v. BOSTON & MAINE R. R.
### Civ. A. No. 5249.

District Court, D. Massachusetts.
June 19, 1946.

Edmund J. Brandon, U. S. Atty., William T. McCarthy, Asst. U. S. Atty., and Jackson J. Holtz, Asst. U. S. Atty., all of Boston, Mass., for plaintiff.

John DeCourcy, of Boston, Mass., for defendant.

FORD, District Judge.

This action by Edmund J. Hayes against the Boston & Maine Railroad arises under Section 8(e) of the Selective Training and Service Act of 1940, as amended, herein-after called the Act, 54 Stat. 890, 50 U.S. C.A.Appendix, § 308(e), to compel the respondent to re-employ the petitioner in his position as yard foreman and for damages arising out of respondent's failure to re-employ him.

The facts are as follows:

In 1934 the petitioner entered the employ of the respondent as a car cleaner. From that time until August of 1943 he held the following positions: yard helper, yard foreman, and temporary assistant yard master. After being promoted to temporary assistant yard master, he was demoted for alleged unworkmanlike conduct to yard foreman, the position from which he resigned on August 5, 1943.

On August 3, 1943, the petitioner, a steady workman, reported for work as usual at the appointed hour and found that his work clothes were locked up in a fellow workman's locker which the petitioner was using temporarily until he could be assigned a locker for himself by the general passenger yard master, who ordinarily made such assignments. On August 3, the workman, in whose locker the petitioner's clothes were, had not reported for work. It was raining heavily and the petitioner notified the yard master that he would be unable to work. The next day the petitioner was laid off and on August 5, 1943 was given a hearing before one Switzer, general passenger yard master, whose duty it was to conduct diciplinary hearings. He was notified by Switzer that he would be disciplined for his refusal to work and would be laid off for a period of two weeks. At that point the petitioner asked the assistant yard master for a release from his essential employment with the respondent and was notified he would not be released unless he signed a resignation. This the petitioner did, to take effect at once, and no findings or conclusions were made by Switzer. On August 12, 1943, W. E. Barnet, acting for the respondent, notified the Navy Recruiting Station, at Boston, that the petitioner had tendered his resignation.

There was evidence adduced by the respondent which showed other disciplinary action against the petitioner.

Previous to the above incident, the evidence showed that on June 25, 1943, the petitioner was placed in classification 1-A by his local Selective Service Board. He took a preliminary physical examination and blood test on July 22, 1943. On August 3, 1943, approximately the same day the petitioner was laid off, his classification was changed to 2-B, a classification into which those deferred for occupational reasons were placed.

On August 6, 1943, the day following his resignation, the petitioner, visited the Navy Recruiting Office, in Boston. On the following day he went to the Army Recruiting Office, in Boston. On August 9, 1943 he returned to the Navy Recruiting Office and was told to have his teeth fixed and he would be acceptable to the Navy. He had his teeth fixed and on August 10, 1943, returned to his local Selective Service Board and signed an application for voluntary induction into the armed forces. The records of Local Board No. 13 reflected that he stated at that time it was his intention to join the Seabees. On August 17, 1943 he was inducted into the United States Navy. He began active duty on August 24, 1943.

On November 1, 1945 the petitioner was honorably discharged from the United States Navy. On November 13, 1945 he applied for reinstatement to his former position with the respondent and was refused re-employment. The present action was commenced April 16, 1946, the United States Attorney acting as the petitioner's attorney after application by the petitioner. Section 308(e) of the Act. The delay in commencing suit was in no way attributable to the petitioner. The petitioner earned no wages from the date of his application for re-employment up to and including the date of trial.

No brief was submitted by the respondent, but I understand it relies on two contentions to defeat this action.

■ First, it contends that Section 8 of the Act applies only to those who have been inducted into the armed forces under the provisions of the Act and not those who enlisted or volunteered for service. There is no merit in this contention. Section 7 of the Service Extension Act of 1941, 50 U.S. C.A.Appendix, § 357, extends the re-employment benefits of Section 8 of the Act to any person who, subsequent to May 1, 1940, entered upon active military or naval service to the same extent as in the case of persons inducted under the Act.

The second contention of the railroad is that when the petitioner here resigned from his employment with it on August 5, 1943, and his resignation was accepted, he did not, within the meaning of Section 8(b) of the Act, leave a position "in the respondent's employ in order to perform training and service in the armed forces."

In support of this contention the respondent argues the petitioner left his position with it to escape the consequences of disciplinary action by it and not for the purpose of induction into the armed forces. It is true the petitioner was subject to disciplinary action if a finding was made by the disciplinary officer that he was not justified, under the circumstances, in refusing to work on the night in question. However, he had no reason to believe any considerable punishment was to be meted out to him. He was told that a two weeks lay-off was the extreme. To escape such minor punishment was hardly an adequate reason for resigning his employment. Even if, though I find to the contrary, prospective disciplinary action influenced the petitioner to resign, this circumstance does not, by any means, preclude a finding that he left primarily to join the armed forces and not to escape disciplinary action. The events following the disciplinary hearing up to his actual enlistment are strong evidence of his real purpose in separating himself from his employment with the respondent.

The facts as outlined above show he was in class 1-A for some time before this incident, and he had taken his physical examination. He sought out the Navy Recruiting Office the very next day following his resignation and the day following visited the Army Recruiting Office. This was some days before the respondent notified the Navy Recruiting Station, at Boston, that the petitioner had resigned his employment and was available for induction. A most significant fact in this connection is that

the petitioner sought a release from his essential employment before he resigned, which indicates the petitioner was service-minded before he actually resigned. It is fairly inferable he did this for the purpose of terminating his deferment and enlisting in the armed forces. And certainly every action of the petitioner immediately following his resignation indicated he was service-minded and constitutes convincing evidence of his purpose in separating himself from his employment with the respondent.

The facts warrant the ultimate conclusion that the petitioner left his employment with the respondent in order to perform training and service in the armed forces. That the petitioner resigned in order to terminate his deferment cannot be availed of by the respondent to deny the petitioner the benefits of the Act.

The Supreme Court in a recent decision has stated the Act must be liberally construed to protect the veteran, cf. Fishgold v. Sullivan Drydock & Repair Corp. et al., 66 S.Ct. 1105, and the re-employment benefits of the Act should be extended to a veteran in a deferred class who resigned his employment in order to become available for induction into the armed forces. To become entitled to the re-employment benefits of the Act, it makes no difference, as I read Section 8(b), whether a person resigned his employment before induction or after induction or did not resign at all if he left his employment for the purpose of performing training and service in the armed forces.

Conclusions of Law.

The judgment of the court is that the respondent shall restore the petitioner to the position he held prior to his induction; also it will pay as damages the wages the petitioner would have earned from the time of his application for re-employment up to the date of re-employment, with allowance in favor of the respondent of the petitioner's earnings during this period. Section 8(e) of the Act.

The parties will make the computation as to damages and submit it to this court for approval.