## BOSTON & MAINE R. R. v. HAYES.
### No. 4210.

Circuit Court of Appeals, First Circuit.
March 7, 1947.

John De Courcy, of Boston, Mass., for appellant.

Searcy L. Johnson, Sp. Asst. to Atty. Gen., John F. Sonnett, Asst. Atty. Gen., and Philip W. Yager and Fendall Marbury, Attys., Department of Justice, both of Washington, D. C., and George F. Garrity, U. S. Atty. and William J. Koen, Asst. U. S. Atty., both of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and HEALEY, District Judge.

WOODBURY, Circuit Judge.

This appeal from a judgment in favor of a petitioner under § 8(e) of the Selective Training and Service Act of 1940, 54 Stat. 891, 50 App. U.S.C.A.Appendix § 308 (e), for restoration in employment as re- quired by § 8(b) (B) of the Act presents a question which appears to be one of first impression in the Circuit Court of Appeals. It is this: Does an employee whose induction is deferred at his employer's request, but who resigns from his employment in order to volunteer for induction into the armed forces, forfeit his statutory right to be restored, on the satisfactory completion of his military service, to the position from which he resigned, or to one of like seniority status and pay?

The respondent argues that he does. It says that when Congress in § 8(b) of the Act gave a right to reemployment to any person "who, in order to perform * * * training and service, has left or leaves a position" etc., it clearly expressed its intention to give reemployment rights only to persons forced or compelled to leave their civilian jobs because of the military training and service required of them by the Act. And the respondent says that this obvious meaning of the words themselves is strongly reenforced by the underlying purpose of the Act to provide military manpower in a controlled and orderly fashion with a minimum of disturbance to essential industry. We do not agree.

In the first place the words chosen by Congress do not seem to us clearly to express the limited meaning attributed to them by the respondent. We think they will readily bear the broader interpretation contended for by the petitioner. And in the second place we think the legislative history of the Act indicates unmistakably that Congress intended its words to have this broader interpretation. That is to say, we think Congress intended the reemployment provisions of the Act to apply to the man who voluntarily quits his job to enlist or to make himself available for induction as well as to the man who is compelled to quit his job because of his induction in the usual course.

The bill which eventually became the Selective Training and Service Act of 1940, as originally introduced in the Senate, contained no provision for the reemployment of service men upon their return to civilian status. Its reemployment provisions evolved in the Senate Military Affairs Committee to which the bill was referred. There is no need to detail here

the development of the provisions in the Committee. It will suffice to point out that § 8(b) of the bill as it was reported by the Committee to the Senate read, as we have italicized it: "In the case of any such person who has left a position or *by reason* of being so inducted into such forces *is required* to leave a position" etc. This language clearly gave reemployment rights to those who had previously volunteered, but it seems to us equally clear that it gave such rights only to those who, after the passage of the Act, should be compelled to leave their employment by reason of their induction. But the above provision was amended in the Senate to its present form which is: "In the case of any such person who, *in order to perform* such training and service, has left or leaves a position", etc., and as so amended the bill passed the Senate and subsequently the House.

There does not appear to have been any very illuminating discussion of the amendment on the floor of the Senate, but nevertheless its purport seems clear. We think it must have been intended so to broaden the scope of the provision as to make it applicable not only to those who might be forced to leave their employment because of their induction but also to those who might resign from their employment "in order to perform" their military service as volunteers.

And this interpretation is in accord with the general tenor of the Act. It is not a national service act. It does not attempt to impose over-all controls on the nation's manpower. Its purpose was to increase and train the personnel of the nation's armed forces by compelling military service, and as such, it no doubt tended to discourage volunteering. But it did not go so far as to prevent that practice. On the contrary in § 3(a) it expressly provided that under certain conditions an opportunity to volunteer for induction must be preserved. To be sure one of the conditions imposed is that the volunteer for induction must not be in a deferred classification, but this falls short of prohibiting a man from stepping out of such a classification by leaving his employment.

We think the court below was correct in interpreting § 8(b) of the Act as granting reemployment rights to any person who resigns from his job as a means of terminating his deferment and thereby making himself available for voluntary induction, provided of course that he does so for the purpose of serving, is accepted, and then actually serves, in the armed forces.

The judgment of the District Court is affirmed.