## CONGREGATION OF BROTHERS OF ST. FRANCIS XAVIER v. GRONE.

### No. 10529.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1947.

M. P. Eldred, of Louisville, Ky. (Eli H. Brown, III, Marshall P. Eldred, and Henry T. Merrit, all of Louisville, Ky., on the brief; Brown & Eldred, of Louisville, Ky., of counsel), for appellant.

Randolph A. Brown, of Louisville, Ky. (David C. Walls and Randolph A. Brown, both of Louisville, Ky., on the brief), for appellee.

Before HICKS, MARTIN, and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Suit by Grone, a veteran of World War II, for restoration to the position of head football coach and substitute teacher at St. Xavier High School, Louisville, Ky. The suit was based on Sec. 301 et seq. of the Selective Training and Service Act of 1940 as amended, Title 50 Appendix, U.S. C.A. Appellant Congregation answered that appellee's services as football coach had terminated prior to his induction into the armed forces and that at that time no contract either existed or was contemplated. The pertinent provisions of the Act are as follows:

"Section 8

\* \* \* \* \* \*

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \* \* \* \*

"(B) If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \* \*

"(e) In case any private employer fails or refuses to comply with the provisions of subsection (b) or subsection (c), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action."

The District Court found that a liberal construction of the Act was required by decisions of the Supreme Court and concluded that appellee had "left a position, other than temporary, in the employ of respondent to enter the service" and that he should be reinstated as head football coach at appellant's school, with the understanding that he help otherwise during the football season and was allowed damages; hence this appeal.

Appellee was head football coach at St. Xavier for the football season of 1936 and thereafter was employed by it during the football seasons to and through the year 1942. He performed his duties each year under a separate contract except that he was employed for the 1941 and 1942 seasons under a single instrument. The compensation varied from year to year as did the dates upon which the contracts were executed. The contract for the year 1939 is typical and was as follows:

"February 3, 1939

"Contract between St. Xavier High School and Clyde Grone

"Re: Football Coach

"This agreement made and entered into this 3rd day of February 1939 by and between St. Xavier High School, party of the first part, and Clyde Grone, party of the second part.

"Witnesseth That the party of the second part agrees to take up the duty of football coach for the 1939 season and to help otherwise during the football season. The football season is understood, in this contract, to include practice during the Spring months, starting with February, 1939.

"The party of the first part agrees to recompense the party of the second part to the amount of Thirteen Hundred Dollars ($1300.00), payable in installments, during the season, with the stipulation that no more than Four Hundred and Fifty Dollars ($450.00) will be paid before September, 1939.

"Signed: Clyde Grone,
"Brother William, C.F.X."

The contracts for the 1938 and 1940 seasons were almost identical in wording with that for 1939 except for dates and amounts. There was spring football prac-

tice. In some of the contracts the season was stated to begin in February, and in others, in March.

The last contract was entered into January 31, 1941, and was for two seasons. The compensation was $1400 for each year, payable in instalments during the season, with the stipulation that no more than $480 would be paid before September 1941 and the same amount before September 1942. This contract contained the following new paragraph, to wit:

"In case of Mr. Grone's being called to serve in the armed forces of the United States, this contract will be void from date of termination of service at St. Xavier."

Appellee testified that in addition to the football work, he by oral agreement did some track work and teaching, for which he received extra compensation. Appellant's witness, Brother William, principal of St. Xavier from 1937 to 1943, denied that appellee was an official teacher but admitted that he taught one period of Civics, for which he was paid $100 and for which he subsequently received a donation. He denied that there was any contractual obligation to use appellee as a teacher or to pay him any set sum. Appellee testified that Brother William did not tell him during the 1942 season that his services were unsatisfactory and that he expected to return to St. Xavier after his return from the Service. He testified that Brother William had gone so far as to say that he would be there as long as Brother William was. Brother William testified that he had no recollection of making such a statement and thought it unlikely that he had made it because he was to leave St. Xavier in August 1943. Charles Griffin, assistant football coach at St. Xavier, testified that he expected appellee to return as head coach and based that belief upon statements to that effect by Brother William. There was testimony that appellee had become unacceptable to the Tiger Boosters, an organization pledged to support athletics at St. Xavier; that this feeling had been communicated to Brother William and that the Tiger Boosters, as early as November 1941, had made inquiries as to the possibilities for a new coach. Brother William stated that in 1941, and again in 1942, the team lost six games, that they were suffering a financial loss and that regardless of his entering the military service he would not have had appellee longer as head coach.

The court found that appellee performed his services during each football season from the season of 1936 to and including the season of 1942 under written contract; that each contract was for one football season only, except that the last contract was for the football seasons of 1941 and 1942; that at the conclusion of each football season the expiring contract was not renewed, but a new contract was executed for the next football season, except as we have noted, that the football seasons of 1941 and 1942 were included in one contract.

The finding set out in full the contract for the seasons of 1941 and 1942. The court found that the season for 1942 terminated on November 29, 1942, when the team played its last football game; that on November 30, 1942, appellant paid appellee the balance due him; that during the 1942 season appellee received notice to report for military duty but did not report for duty until December 7, 1942; that appellee received an honorable discharge from the army on September 16, 1945, and that on November 28, 1945 he applied to appellant for reemployment in his former position but that appellant refused to so reemploy him and that his petition for reemployment was filed on June 6, 1946.

Upon these findings we think it is unmistakably clear that appellee had not left or did not leave "a position" in order to enter training or perform military service. His contract for 1942 was fully performed on November 29th and he had been fully compensated and no new contract was executed. The court concluded, however, that "from 1936 up to the date of petitioner's induction, it had become customary to continue petitioner's employment and from the facts stipulated and proven in this case, it is inferred that petitioner would have been continued as head football coach but for his induction into the army." The court felt constrained by the decision of the Supreme Court in Fishgold v. Sullivan Dry Dock Corporation.

328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, to give a liberal construction to the Act and order appellee's restoration.

We agree that the Act should be liberally construed for the benefit of those who left private life to serve their country in its hour of great need; but we cannot agree that the language of the Act should be construed beyond its reasonable meaning. The Act is explicit. A veteran is entitled to its benefits "who, in order to perform such training and service, *has left or leaves a position* * * * in the employ of any employer. * * *" The "position" under the contract was that of football coach and obviously appellee did not leave it in order to enter the service for the reason that by the terms of the contract that position had ceased to exist.

There was some evidence from which the court, laying the contract to one side, might have inferred that appellee would have been continued as head football coach but for his induction into the army, but from our viewpoint such an inference is completely negatived and destroyed by the terms of the contract itself.

Whatever may have been appellee's expectation or spes that he would be rehired, there was no understanding to that effect— no contract, in existence at the time he entered the service. The parties had from the first football season in 1936, without exception, chosen the written instrument as the medium for incorporating their yearly understandings and we cannot create for them a different medium. We are not authorized to alter or strike down their contract.

The specific issues in the Fishgold case are in no wise similar to the one raised here. The present case is like that of McCarthy v. M. & M. Transp. Co., 1 Cir., 160 F.2d 322, wherein a veteran inducted into the army on September 3rd was placed on inactive duty with orders to report for active duty on September 24th and returned to work and was discharged on September 7th. He was held not entitled to reemployment because he failed to show that he left a position in order "to perform military training and service." Here appellee has failed to show that he left a position with appellant to perform military training and service. He, in fact, did not leave any position to which he might be returned because under the contract "the position" no longer existed. See Fields v. Southern Ry. Co., D. C., 68 F.Supp. 801.

Appellee argues that since he had coached football at St. Xavier for seven years prior to his induction he had an employment status even though he may not have had a contractual status. In support of this contention he relies upon Boston & M. R.R. Co. v. Hayes, 1 Cir., 160 F.2d 325, wherein the veteran had been deferred but resigned from his job in order to volunteer for induction. When he applied for reinstatement the employer contended that he did not leave a position in order to enter the service since his resignation had been accepted prior thereto. The court rejected this contention and affirmed the judgment of reinstatement. The case stands only for the principle that one who resigns from a continuing job in order to make himself available for volunteer induction has reemployment rights and has no bearing here.

Appellee places his chief reliance upon United States ex rel. and to Use and Benefit of Stanley v. Wimbish, 4 Cir., 154 F.2d 773, 775. It appeared that Stanley was employed as a seasonal contact man and salesman for a tobacco warehouse; . that the seasons began in December and ran for about two months. Stanley was used in 1939-40, 1940-41, and in 1941-42. He served in the army fourteen months and thereafter sought reinstatement for the 1943-44 seasons, which was refused. Whatever contracts there were, were oral. There was disputed testimony, whether he worked on a year to year contract or seasonally for an indefinite time, terminable at will. The District Court decided against Stanley but the Circuit Court of Appeals reversed, saying,—

"Where a worker in a seasonal business can establish 'customary continuance in his employment and recognition of his preferential claim to his job' when work is resumed, he is entitled to the protection of the Act's reemployment provisions, though he entered military service during an off-season period. Proof of a legally enforceable contract for the following sea-

son is no more a proper requirement in such cases than it is with respect to any other employee whose services are *terminable at will.*" (Italics ours.)

The Wimbish case is not in point. The decision is based upon the assumption that there was a continuing oral contract terminable at will and presumably unterminated; whereas in appellee's situation each employment period was by written contract made coincident with the football season. The season had been completed and appellee paid off before his induction.

The judgment is reversed and the case dismissed.