## RUDISILL v. CHESAPEAKE & O. RY. CO.
### No. 5701.

Circuit Court of Appeals, Fourth Circuit.
April 1, 1948.

R. Roy Rush, Asst. U. S. Atty., of Roanoke, Va., (Howard C. Gilmer, Jr., Acting U. S. Atty., of Pulaski, Va., on the brief), for appellant.

J. M. Perry, of Stanton, Va., and Edward M. Hudgins, of Richmond, Va., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question raised in this case is whether Section 8 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308, providing for the restoration to his former employment of a person discharged from the land or naval service, applies to a person who was deferred from induction because he was engaged in an endeavor essential to the war effort, and who surrendered his position voluntarily in order to be eligible for active duty, and was thereupon inducted into the armed forces. Rudisill, the plaintiff, was an expert railroad telegraph operator who had been deferred by his local Draft Board from military service at the request of the Railway Company because his services were deemed necessary for the performance of the duties imposed upon the Railway Company by the war. The deferment was extended for successive periods, limited by executive order to six months' duration, from July 24, 1942, to September 26, 1945. During the last six month's period, that is, on July 19, 1945, the local Board, at the request of the plaintiff, classified him as 1-A. Thereupon the Railway Company appealed and the order of deferment was continued, and on August 9, 1945, the plaintiff was deferred to September 26, 1945. During his deferment he was prohibited from voluntary enlistment by Executive Order of the President No. 9279, par. 4, 50 U.S.C.A.Appendix, § 310 note, and he was ineligible, for induction under the statute, 50 U.S.C.A.Appendix § 305(k), so long as he remained in an endeavor essential to the war effort.

On August 9, 1945, the plaintiff resigned his position in order, as stated in his letter

of resignation, that he might establish himself in a non-essential status, and might be drafted into the military service. On August 19, 1945, he wrote his local Draft Board requesting that he be made available for services in the armed forces, and on August 23, 1945, he volunteered to be inducted. The Local Board took no action until September 26, 1945, the date of the expiration of his deferment, when it ordered the appellant to report for induction. On October 8, 1945, he was inducted.

The plaintiff received an honorable discharge and a certificate of satisfactory completion of training and service on April 1, 1946; and on April 21, 1946, applied for reemployment in his former position. His application was refused but he was offered reemployment as a new man without seniority which he declined until November 5, 1946, when he returned to work without benefit of his previously acquired seniority. He sues to obtain restoration to his former position and to recover the pay lost as the result of the Railway Company's failure to comply with the terms of the statute.

With respect to a person who has completed his services in the land or naval forces, and has been given a certificate of discharge, Section 308 of the statute provides:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is removed from such training and service—

\* \* \* \* \* \*

(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so \* \* \*." See also Section 357.

It will be noted that the facts relating to the plaintiff's employment and military service bring him within the literal terms of the statute; but the District Judge holds the opinion that in this war Congress provided not only for the active service of men at the front, but also for the use of the manpower of the nation in civilian service at home when necessary to the maintenance of the war effort, and that the assignment of a registrant to either kind of service was binding upon him. To this end provision was made for the registration of all persons between the ages of 18 and 65, who were required to make returns to questionnaires so as to determine their availability for services in the national defense, Section 302. The President was authorized to provide for the deferment of all men whose employment in industry, agriculture or other occupation should be found necessary to the maintenance of the national health, safety or interest, Section 305(e) (1); Selective Service Boards were set up to hear and determine all questions with respect to the inclusion for or deferment from training and service, Section 310(a) (2), and these Boards were directed to defer from service any person found to be engaged in an endeavor essential to the war effort so long as the registrant remained so engaged, Section 305(k); voluntary enlistment by one in deferred classification was prohibited, Section 303(a), and it was provided by Executive Order 9279 that entry into the armed services was permissible only under the provisions of the statute, and all hiring of workers in any occupation essential to the war effort was required to be done through the United States Employment Service under the supervision of the War Manpower Commission.

The argument based on these provisions is well stated by the District Judge as follows:

"It is clear that in enacting the Selective Service Act of 1940 the purpose of Congress was not limited merely to the recruitment of men for the military and naval forces. The act had the broader purpose of arraying the man-power of the nation and utilizing it for whatever activities, whether military or civilian, as might be necessary to the national safety. The purpose was not only to pick men for the army and navy but also to determine those who, in a time of war or threatened war, could

serve with greater value to the country outside of the armed forces.

\*     \*     \*     \*     \*     \*

"The reference to these scattered provisions of the statutes and executive orders dealing with the conduct of the war have been made to point up the extent to which governmental authority was exercised to fix the part which every citizen should play in the war effort, and the narrow limits within which a citizen might follow his own desires. It was the purpose of the government to assign each registrant to that form of effort, whether in the armed forces or in a civilian occupation, where his services would be of greatest benefit to the nation. We did not have complete conscription of our manpower but about the only way in which we stopped short of it was in not applying to those selected for essential civilian work the compulsory service therein that was applied to those selected for the armed forces.

\*     \*     \*     \*     \*     \*

" \*   \*   \* The statute must be construed in accordance with its language and its intendment, and no sympathetic feeling for plaintiff can justify extending it beyond its meaning. Within this meaning the plaintiff did not leave his employment in order to perform service in the armed forces. At the time he left his employment, it was impossible for him to enter such service. He could not be drafted into the service because he occupied a deferred status, and he could not enter as a volunteer because voluntary enlistments were no longer accepted. \*   \*   \* He did not leave his employment in order 'to perform training and service'. He left it in order to acquire a non-deferrable status which he hoped would lead to the performance of training and service at some later time. His hopes were realized and he was finally inducted for 'training and service' on October 8, 1945; but at that time he was not an employee of defendant and had not been for approximately two months."

■   This viewpoint is not without force, but in our opinion it cannot be upheld in the face of the explicit terms of Section 8 of the Act. Its provisions are not limited to persons who are forced to leave their positions and called up to perform military training and service, but are extended to all those who leave their positions in order to perform such service. Indeed it has been shown that when the provision in question was first brought to the attention of Congress in the Committee Report, it was so phrased as to cover a person inducted into the armed service who "is required" to leave his employment; but during the progress of the Act through Congress, the words "is required" were taken out and the words "has left or leaves" were substituted therefor. See 86 Congressional Record, 10,079, 10,922.

■■   It seems clear that Section 8 of the Act was intended to benefit all who left positions of safety in order to fight for the country, whether by reason of the force of the draft or of their own free will. Both classes were subjected to the same hardships and dangers and both were strengthened in their morale by the assurance that positions of employment would await them upon their return. Furthermore, it cannot be said upon reflection that an employee who gave up a deferred status in order to qualify for induction interfered to such an extent with the disposition of the manpower of the nation as arranged by those in authority, that Congress must have intended to exclude him from the benefits provided for returning veterans. Had this been the legislative intent, it would have been easy to forbid a registrant with a deferred status from surrendering it in order to enter the armed forces. Congress did not impose this restriction but left the registrants free to offer themselves for active conflict if they should so desire. The result in this case was that the plaintiff entered the active service not in defiance of but in accord with the plan of national defense with the permission of those authorized to give effect to the legislative will. His action in surrendering his deferred status and qualifying for service in the armed forces was expressly approved by the order of induction issued by governmental authority. In reaching this conclusion, we find ourselves in harmony with the decisions in several cases: Hayes v. Boston & M. R. R., D. C. Mass. 66 F.Supp. 371; 1 Cir., 160 F.2d 325; Bentubo v. Boston & M. R. R., D. C. Mass, 66 F. Supp. 910, 1 Cir., 160 F.2d 326; Blackford

 

v. Nashville Gas & Heating Co., D. C. M. D. Tenn., 68 F.Supp. 997; McCarthy v. Merchants & Miners Transp. Co., D. C. Mass, 66 F.Supp. 374, 1 Cir., 160 F.2d 322; Congregation of Brothers v. Grone, 6 Cir., 164 F.2d 689. See also Thompson v. Chesapeake & Ohio Ry. Co., D. C. M. D. W. Va., January 27, 1948, 76 F.Supp. 304, where the distinguishing features of the cases cited above are pointed out.

We find no substance in the suggestion that the plaintiff did not leave his position in order to perform active duty or service, but merely to engage in some other occupation from which he might lawfully be inducted. His letter of resignation shows clearly that he left his job in order to enter the service. He made two attempts to volunteer during the short period which elapsed before his deferment expired, and on the day when that event took place he was ordered to report for induction. Meanwhile he had no other employment, so far as the record discloses.

The Railway Company makes the additional contention that the plaintiff may not be legally restored to his old position or to a "position of like seniority, status and pay," because at the time of his resignation he was a member of the Order of Railway Telegraphers which had a contract with the Railway Company that provides that the seniority rights of a member shall be lost upon resignation, according to the interpretation placed upon the contract by the Union. The answer to this argument is clearly given by the Supreme Court in Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1530, 167 A.L.R. 110, where in considering the seniority rights conferred upon a returned veteran by the statute the court said:

"This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. See Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L. Ed. 1587. *And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act.* Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." (Italics supplied.)

The judgment of the District Court will be reversed and the case remanded for further proceedings.

Reversed and remanded.