## NOBLE v. INTERNATIONAL NICKEL CO., Inc.

Civ. No. 455.

District Court, S. D. West Virginia.

April 28, 1948.

L. E. Given, U. S. Atty., of Charleston, W. Va., and Philip A. Baer, Asst. U. S. Atty., of Huntington, W. Va., for petitioner.

Scherr, Meek & Vinson and John B. Meek, both of Huntington, W. Va., Sullivan & Cromwell and Roy L. Steinheimer, both of New York City, for respondent.

WATKINS, District Judge.

This is another action in which petitioner claims that he left his employment with respondent to enter the military service and seeks reinstatement under the provisions of Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(e). Respondent has denied reinstatement on

the ground that he did not intend to enlist in either the Navy or the Merchant Marine when he left his employment. It is conceded that if he left his employment to enter either the Navy or the Merchant Marine, he is entitled to the benefits of the Act. Civilian Reemployment of Members of the Merchant Marine, Title 50 U.S.C.A.Appendix, § 1471.

Petitioner was employed by respondent for a few months in 1937, but was reemployed in 1939, and remained in such employment until January 1, 1945, when he quit work. Although he was married and had two children and was in a deferred classification as an essential worker, he wanted to get into some branch of the service. He preferred the Merchant Marine or the Navy. For about one month before leaving his employment he made frequent visits from his home in Huntington, W. Va., to Madison, W. Va., to talk with his sister about his plans. On one of those visits during the Christmas holidays, only a few days before he quit work, his sister, realizing that he was determined to enlist in the Merchant Marine, called the Merchant Marine headquarters in Cincinnati, O., to secure information for him about the compensation in this branch of service. She tried to persuade him to enter the Navy instead of the Merchant Marine. During the two week period immediately preceding January 1, he also talked to different fellow employees about his intention to enter the service. On one of those occasions in the locker room, he stated in the presence of a number of people that he "was going into the service". On another occasion he stated that he "was dissatisfied", and that he "wanted a release to get out to join the service" and that he "was going to quit and join the service". In order to get in the service by enlistment it was necessary for him to get a release from his employer from the deferred classification. About one week before January 1 he went to the recruiting office to see about enlistment, but was referred to his Local Draft Board. There he was told that he was on deferment and could not enlist unless he signed Form 219. On January 1 he quit work, and notified his employer that he was

leaving his employment. On the same day he went to the U. S. Employment office to secure information on the Merchant Marine. One week later he went to Cincinnati, O., and secured applications for the Merchant Marine. After discussing this branch of service with his wife he decided to enlist in the Navy, and on April 15 signed the necessary papers for his enlistment. He would have been inducted immediately had he been three days earlier in signing his papers. He had to wait until the February call for his induction. On January 15 respondent wrote the Local Board that petitioner had quit his work because he was dissatisfied and requested that his deferment be cancelled, and on January 19 he was placed in Class 1A. He was actually inducted into the Navy on February 6, 1945, and was honorably discharged on February 19, 1946. On May 20, 1946, his employer refused to reinstate him in his former position.

By agreement between his employer and the union, if he left his employment to enter the military service and gave notice to that effect to his employer, he would have been entitled to receive one month's additional pay. When petitioner arrived at camp he presented the papers given to him by his employer to his commanding officer in order that the month's pay might be forwarded to him, but was told that he had not secured the proper papers and he never did get that extra pay. Petitioner did not say anything to his employer concerning the separation pay at the time he left because he did not think it necessary. He believed that if he actually entered the military service that the separation pay would be forwarded to him as a matter of course.

There is no substantial dispute in the evidence concerning the facts stated above. The conflict in the evidence relates to whether petitioner notified his employer that he was quitting work to enter the military service. Respondent's personnel director (Brady) and merchant mill superintendent (Griffiths) testified that petitioner did not tell them that he intended to enter the military service; that he indicated to them that he was having domestic trouble,

and leaving town. They filled out and gave him a slip of paper on the usual form showing that he was leaving the service of the company. The paper showed that he was leaving because he was "dissatisfied", and Brady says that the words "leaving town" were added at petitioner's request. They both deny that petitioner told them of his intentions to enter the service. They say if they had known he was going into the service they would have placed him on leave of absence status, and not given him the separation paper. Petitioner says that about three days before he left, he told Griffiths of his intentions to enter the Merchant Marine and asked him for a release so he could enlist; that he went to Griffiths' office twice afterward before receiving the paper; that when he was given a paper he told Griffiths it was not the kind of paper he wanted, that he wanted a release, and Griffiths assured him that it was the same thing. Noble was the 28th man to enter the service from Griffiths' department. There were 867 to enter the service from the whole plant and to clear through Brady's personnel department.

It is not necessary to decide whether petitioner notified respondent that he was going to enter the military service, because the Act does not require such notice. However, it would seem that with the number of men from this large plant entering the service, there is more chance for Griffiths and Brady to be mistaken in their recollection, than for petitioner to forget a matter of so much importance to him. This is especially true in view of the fact that he had publicly announced his intentions and had talked to nearly every one concerned about his plans to enter the military service. If petitioner was having domestic trouble at home and was thereby dissatisfied, this would be an additional reason for him to enter military service. He was a good workman and the evidence shows no dissatisfaction with his work. Consequently, the words "dissatisfied—leaving town", written on the paper which he received, in no way refute or conflict with his desire and intent to enter the military service.

■ The evidence clearly shows that petitioner left his employment to enter the military service. It is not denied that he talked about his plans to his wife, sister, fellow employees, his Local Board and the recruiting officers. It is urged that he did not intend to enter the military service because he did not notify his employer. The same day he quit work he went to the U. S. Employment office to find out about getting into work with the Merchant Marine. One week later he went to Cincinnati to get enlistment papers and two weeks after leaving work he had signed the enlistment papers for the Navy. In the interim he did not obtain or seek other employment. Respondent has neither offered nor suggested any other explanation or reason for leaving his employment, and there would seem to be none.

■ It was also urged that petitioner is precluded from the benefits of the reemployment provisions of the Act by reason of being in a deferred classification and resigning from such employment in order to obtain a 1A classification and thereby became available for military service. This argument was answered by Judge Soper in Rudisill v. Chesapeake & Ohio Ry. Co., 4 Cir., 167 F.2d 175. See also Thompson v. Chesapeake & Ohio Ry. Co., D.C., 76 F. Supp. 304.

■ This Act is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. Fishgold v. Sullivan Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230; Rudisill v. Chesapeake & Ohio Ry. Co., 4 Cir., supra.

While reinstatement was refused on May 20, 1946, this action was not filed until February 4, 1948, a delay of more than 20 months. The only explanation of this delay is that in June, 1946, petitioner turned the matter over to his Local Board, and thereafter left it up to them.

■■ The law is well settled that where a veteran has delayed an unreasonable length of time in enforcing his demands, it would be unfair to the employer to compel compensation for the interim period. The Act contemplates that action shall be taken immediately upon an employer's refusal to reinstate, and provides that the court shall

advance the case on the calendar to assure a speedy hearing. Although petitioner took the matter up with his Local Board for assistance as the Act contemplates, he cannot wait indefinitely, even with the consent and acquiescence of his Local Board, and hold the employer for damages in the interim, if such delay in enforcing the veteran's rights was no fault of the employer. The cases on this point are fully reviewed in Thompson v. Chesapeake & Ohio Ry. Co., supra. Petitioner's delay of 20 months in filing suit was an unreasonable delay and no compensation is due him for this period.

Since this suit was instituted petitioner has had no earnings. Respondent is not entitled to credit for money paid to petitioner by the United States for subsistence allowance while he has been attending trade school under the provisions of Title 38, Ch. 12, Part VIII of the United States Code, 38 U.S.C.A. note following section 739.

In addition to reinstatement petitioner is entitled to receive compensation which he would have earned if reemployed in his old position from February 4, 1948 to date of reinstatement. An order may be entered accordingly.