**Jerry C. TRULSON, Plaintiff-Appellant,**
v.
**TRANE COMPANY, Defendant-Appellee.**
**No. 83–1189.**

United States Court of Appeals,
Seventh Circuit.

Submitted April 19, 1984.*

Decided May 18, 1984.

---

* On April 8, 1983, defendant-appellee filed a suggestion that oral argument was not necessary for this appeal. Plaintiff-appellant agreed in his response, filed on May 4, 1983, that oral argument was not necessary. Accordingly, the appeal is submitted on the briefs and record.

James P. Gokey, Johns, Flaherty & Gillette, S.C., LaCrosse, Wis., for plaintiff-appellant.

**1.** Defendant devotes a considerable portion of its brief to the argument that plaintiff's deposition was not offered into evidence below, is not part of the record on appeal and that plaintiff's use of the deposition in his brief amounts to a repudiation of the stipulation of facts agreed to by the parties. This argument is puzzling, to say the least. Plaintiff's deposition was on file in the district court, as it was attached as an exhibit to, and incorporated by reference in, an affidavit filed in support of plaintiff's summary judgment motion. The deposition also was incorporated by reference in the stipulation of facts. Rule 56(c) specifically requires that depositions on file be considered by the district court in determining whether a genuine issue as to

· Thomas S. Sleik, Hale, Skemp, Hanson & Skemp, LaCrosse, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and SWYGERT, Senior Circuit Judge.

PELL, Circuit Judge.

Plaintiff, Jerry Trulson, filed the instant suit to enforce the reemployment rights to which he believes he is entitled as a veteran of military service. The district court granted summary judgment to defendant Trane Co., plaintiff's former employer, after the parties submitted a joint statement of stipulated facts and cross-motions for summary judgment. Plaintiff appeals.

## I.

Summary judgment is appropriate when the pleadings and supporting papers on file below demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All pleadings and supporting papers must be viewed in the light most favorable to the non-moving party. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). Many of the facts mentioned below were included in the parties' joint statement of stipulated facts; those that were not are stated in the light most favorable to plaintiff.[1]

any material fact exists, and in reviewing the granting of summary judgment, this court is also entitled to review such depositions. *See Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1221 n. 5 (7th Cir.1984). Of course, to the extent that Trulson's deposition conflicts with the parties' stipulation of facts, the latter controls. However, there is no indication in the record that the parties intended the stipulation of facts to be the only facts the district court could consider in ruling on the cross-motions for summary judgment. Indeed, the district court's findings of fact include some facts not mentioned in the stipulation. Accordingly, we will not limit our understanding of the facts to those found in the stipulation.

Plaintiff's employment with Trane began on July 2, 1973. During his employment, the collective bargaining agreement to which Trulson was bound provided in rule seven:

Repeatedly failing to report for work when physically able to do so. If an employee shall have received five (5) unexcused docking slips within a period of six (6) months of working time, he shall have violated this rule.

The contract further provided:

ANY VIOLATION OF THE RULES AND REGULATIONS NUMBERED SEVEN (7), EIGHT (8), OR NINE (9) BUT NOT INCLUDING 7A SHALL SUBJECT THE EMPLOYEE TO ONE (1) WEEK'S LAYOFF WITHOUT PAY FOR THE FIRST VIOLATION AND DISCHARGE FOR THE SECOND VIOLATION WITHIN A PERIOD OF ONE (1) YEAR OF WORKING TIME.

Sometime late in 1974, Trulson received his fifth unexcused docking slip within six months and was suspended without pay for one week. Plaintiff's tenth unexcused absence within one year occurred on July 2, 1975.

Trane's records show that a notice of docking penalty was served on plaintiff on or about July 11, 1975. The final paragraph of the notice stated:

Our records indicate that this is your fifth unexcused absence since 1/31/75 and your tenth since 10/8/74. Therefore, you are subject to discharge under the contract.

Trulson does not recall receiving this notice. He did not know that he had been terminated for excessive absenteeism until he asked Trane to reinstate him following his discharge from the military.

On July 15, 1975, Trulson expressed to defendant for the first time his intention to enter the military.[2] Plaintiff did not return to work for Trane after this date. On August 4, 1975, Trane officially terminated Trulson for having ten unexcused absences in a twelve-month period and sent a notice of termination to his last-known address. The notice was returned and marked "unclaimed" by the Post Office.

Plaintiff signed his enlistment contract on September 9, 1975 and entered the Air Force on October 6, 1975. He received an honorable discharge on October 5, 1979. Within ninety days of his discharge, as required by statute,[3] plaintiff requested reinstatement with Trane. Defendant did not reinstate Trulson, but hired him as a new employee on probationary status. Plaintiff was discharged by Trane in February, 1980, while still on probation. Trulson filed the instant action in 1982.

## II.

■ A veteran's statutory rights to reemployment following military service, *see* 38 U.S.C. §§ 2021–2026,[4] are contingent on the veteran meeting several criteria set forth in the statute. Although the statute is to be liberally construed for the benefit of those who have served their country, *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946); *Barrett v. Grand Trunk Western R.R. Co.,* 581 F.2d 132, 135 (7th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979), plaintiff bears the burden of proving that he has satisfied the statutory re-

---

**2.** Plaintiff testified in his deposition that he had talked to military recruiters in May, 1975 and had performed some tests in June at the local recruiting station. However, he produced no written evidence that he had taken steps in preparation for entering the military prior to July 15, 1975 and could not remember the names of any of the recruiting people he talked with in May or June, 1975.

**3.** 38 U.S.C. § 2021(a) (1976).

**4.** The current statutory sections were codified by the Vietnam Era Veterans' Readjustment Act of 1974, Pub.L. No. 93–508, 88 Stat. 1578. The reemployment provisions of this act and its predecessors, going back to the Selective Training and Service Act of 1940, Pub.L. No. 76–783, 54 Stat. 885, are "substantially identical" and the judicial precedents developed under the various acts are "largely interchangeable." *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1306 n. 4 (7th Cir.1984), *quoting Hanna v. American Motors Corp.,* 557 F.2d 118, 119 n. 1 (7th Cir.1977).

quirements and is entitled to receive reemployment rights, *McCarthy v. M & M Transp. Co.*, 160 F.2d 322, 324 (1st Cir. 1947).

At issue in the case before us is the statutory mandate that any person "who is inducted into the Armed Forces of the United States ... for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform [military] training and service" is entitled to reemployment rights with the veteran's prior employer if certain other conditions are met. 38 U.S.C. § 2021(a) (1976). This case raises several questions concerning the interpretation of § 2021(a), but we need only address one issue, as we find it to be dispositive: whether the benefits of the act may apply to persons in non-deferred job classifications who, at the time they are discharged or quit work, intend to enter the military, but have not yet been inducted, signed an enlistment contract or received an order to report.

Trane argues that plaintiff does not have any reemployment rights because he was formally discharged on August 4, 1975, before he signed up with the military on September 9, 1975. Trulson, on the other hand, contends that he quit on July 15, 1975 in order to enter the military. He claims that he intended to enter the military immediately, but was delayed while the Air Force collected and processed waivers concerning Trulson from police departments in cities where he had lived. Plaintiff also denies that he knew, when he told Trane he intended to join the military, that he was about to be discharged for having ten unexcused absences from work.[5]

A number of reported cases discussing reemployment rights have granted relief to plaintiffs when some sort of formal act linking the plaintiff to military service has occurred prior to the decision by plaintiff not to continue working or the employer's decision to discharge him without cause. For example, in *Widel v. Caterpillar Tractor Co.*, 83 Lab.Cas. (CCH) ¶ 10,605 (S.D.Ia. 1978), plaintiff's employer terminated him without cause before his induction date but after plaintiff had signed an enlistment contract with the Air Force and taken an oath of enlistment. In *Anglin v. Chesapeake & O. Ry. Co.*, 77 F.Supp. 359 (S.D.W. Va.1948), plaintiff did not report again for work after being ordered to report for his pre-induction physical examination. Similarly, in *Fortenberry v. Owen Bros. Packing Co.*, 267 F.Supp. 605 (S.D.Miss.1966), *aff'd*, 378 F.2d 373 (5th Cir.1967), plaintiff's last day of employment was after he was ordered to report for induction.[6] These cases seem to be premised on the theory that implicit in the requirement that an employee leave a job "in order to perform" training and service is some element of compulsion, i.e. some event has occurred by which the employee is no longer free to decide whether to perform military service. *See, e.g., Fortenberry*, 267 F.Supp. at 607 ("The test is whether or not he was *required* to leave his employment to report for [military duty] ...") (emphasis added); *Green*, 526 F.Supp. at 54 (same).

There is also a line of cases dealing with employees who were deferred by the draft board because they were employed in work essential to the war effort. These cases generally hold that an employee who resigns his or her job in order to lose his or her deferred classification and enter the military is entitled to veterans' reemploy-

---

**5.** We note that Trulson does not ask this court to find a disputed issue of material fact. Rather, he argues that the district court erred in not granting plaintiff's motion for summary judgment.

**6.** *See also Green v. Oktibbeha County Hospital*, 526 F.Supp. 49 (N.D.Miss.1981) (employer officially terminated plaintiff before he reported for training, but after plaintiff had joined the National Guard). *But see Congregation of*

*Brothers of St. Francis Xavier v. Grone*, 164 F.2d 689 (6th Cir.1947) (football coach who received notice to report for military duty but did not do so until after the end of the season not entitled to reemployment rights because his contract was fully performed once the season ended and no new contract had been executed; as a result, veteran's position as coach was not in existence at the time he entered the service).

ment benefits even though, at the time the employees resigned, they had not signed an enlistment contract, been inducted or ordered to report. *See, e.g., Rudisill v. Chesapeake & O. Ry. Co.,* 167 F.2d 175 (4th Cir.1948); *Thompson v. Chesapeake & O. Ry. Co.,* 76 F.Supp. 304 (S.D.W.Va.1948); *Hayes v. Boston & Main R.R.,* 66 F.Supp. 371 (D.Mass.1946), *aff'd,* 160 F.2d 325 (1st Cir.1947). Although these employees resigned their employment voluntarily, that was the only course they could follow in order to enter the military; as long as they retained their deferred status, they were prohibited from voluntarily enlisting in the military and were ineligible for induction. *Rudisill,* 167 F.2d at 176. Significantly, there does not appear to have been any doubt about the employees' motivations for resigning in the cases just cited.

The only cases we have found in which a plaintiff without a deferred classification prevailed although, before his last day of work, he had not signed a contract with, or otherwise joined, the military or had not been ordered to report for a physical or induction, are *Noble v. International Nickel Co., Inc.,* 77 F.Supp. 352 (S.D.W.Va. 1948), and *Dame v. C.A. Batson Co.,* 33 Lab.Cas. (CCH) ¶ 71,161 (D.Mass.1957), *on motion for new trial,* 35 Lab.Cas. (CCH) ¶ 71,718 (D.Mass.1958). The plaintiff in *Noble* presented evidence that before he quit his job he had talked to many people about his intention of going into the service and had visited the local recruiting office and draft board for information about enlisting. In addition, Noble procured information about the Merchant Marine the day he resigned, received enlistment papers one week later, and signed enlistment papers with the Navy within two weeks after leaving his job. In short, there appeared to be substantial evidence as to Noble's pre-resignation intention. Moreover, Noble acted promptly in acting on that intention. Similarly, although the plaintiff in *Dame* did not contact the Navy until after he quit, once he left work he enlisted quickly (he entered active duty within three weeks of his resignation from work). Furthermore, the district court found that the sole moti-

vation for quitting was plaintiff's decision to enter military service. In contrast to these two cases, Trulson could offer no testimony or documentary evidence corroborating his testimony regarding his intentions before July 15, his last day of work, and did not sign his enlistment contract until nearly two months thereafter.

The cases discussed thus far provide no clear practical definition of the statutory requirement that an employee is entitled to reemployment rights only if he or she quits work "in order to perform" military service, yet there is a common thread running through the opinions. The best way to reconcile these decisions seems to be that the phrase "in order to perform" means that the employee must provide good evidence of his or her motive for leaving work. Courts have not uniformly construed the statute to require proof that impending military service necessitated quitting work before a veteran may take advantage of the act's protections nor will this court do so in light of the Supreme Court's admonition that the act is to be liberally construed for the benefit of veterans returning to civilian life. Obviously, proof that something has happened that significantly limits a person's freedom to choose whether to enter military service— such as an induction notice or signing an enlistment contract—is very good evidence that an employee's motive in quitting is to enter the military. However, evidence of an employee's pre-resignation intention or evidence of prompt action to effectuate that intention subsequent to quitting may also be effective means of proving that the motive for quitting a job was to join the military. Unfortunately for plaintiff, he has provided no evidence of his pre-resignation intention to enter the military other than his own testimony, nor has he offered any evidence substantiating his contention that the delay in signing an enlistment contract was due to collecting and processing of police waivers by the Air Force bureaucracy.

An additional factor, relevant to the case before us, was mentioned by the court in

*Noble:* there seemed to be no other explanation or reason for plaintiff's resignation other than wanting to enter military service. 77 F.Supp. at 354. *See also Widel,* 83 Lab.Cas. (CCH) at 18,343 ("The record is totally devoid of any indication that plaintiff or defendant contemplated termination of employment prior to his taking the oath of enlistment"). In the instant case, however, there is evidence that Trane intended to fire Trulson on July 11, 1975 for excessive absenteeism before it knew anything about his intention to enlist. In this respect, this case is similar to *Coles v. Sunshine Biscuits, Inc.,* 80 Lab.Cas. (CCH) ¶ 11,860 (E.D.N.Y.1976), *on 59(e) motion,* 83 Lab.Cas. (CCH) ¶ 10,478 (E.D.N.Y.1977), *aff'd,* 82 Lab.Cas. (CCH) ¶ 10,283 (2d Cir. 1977), in which the district court held that the employer was entitled to summary judgment where the plaintiff enlisted on October 22, 1974, was terminated on October 28, 1974 for excessive absenteeism and did not report for active military duty until January 27, 1975.[7]

The July 11 notice of docking penalty stated that plaintiff was subject to discharge for having ten unexcused absences from work. Trulson argues that the July 11 notice did not actually fire him and that his discharge was not inevitable following issuance of the notice because it stated only that he was "subject to discharge." The collective bargaining agreement, however, stated that a second violation of the unexcused absence rule within one year "shall subject the employee to ... discharge." Because the contract uses the word "shall" instead of "may" or "could," we believe this provision on its face, in the absence of any evidence of contrary company practice, required Trulson's dismissal once his tenth unexcused absence occurred on July 2. *Cf. Pekar v. Delaware, Lackawanna & Western R.R. Co.,* 12 Lab.Cas. (CCH) ¶ 63,791 (D.N.J.1947) (labor agreement and practices governing leaves of absence required termination of employment when employee failed to report for work or obtain extension of his leave).

■ While we agree that relief may sometimes be justified when a plaintiff without a deferred classification leaves his or her job before signing an enlistment contract, being inducted or ordered to report, *see, e.g., Noble,* this is not such a case. Because of the length of time between July 15, Trulson's last day of work, and September 9, the date he signed his enlistment contract, plaintiff's testimony alone was insufficient to establish his motive for quitting once Trane presented evidence calling into question plaintiff's asserted motive. Plaintiff offered no corroborating evidence of his pre-July 15 intention to enlist or of his reasons for not enlisting promptly once he quit work.[8] On the record before us, defendant is entitled to judgment because plaintiff has failed to produce enough evidence to carry his burden of proving that he quit work "in order to perform" military service. Moreover, plaintiff's dismissal from his employment was imminent. Just as an employer may not "defeat the intent of the statute by discharging a man because he is going into the Armed Forces," *McCarthy,* 160 F.2d at 324, an employee should not be allowed to contravene Congressional intent by quitting just after his employer has decided to

---

7. *Cf. Barbee v. Capital Airlines,* 191 F.2d 507, 509 (D.C.Cir.1951), *cert. denied,* 342 U.S. 908, 72 S.Ct. 302, 96 L.Ed. 680 (1952) (employer's intention to discharge employee a factor in deciding whether plaintiff left his job in order to perform military service); *Edwards v. Capital Airlines,* 176 F.2d 755, 757 (D.C.Cir.), *cert. denied,* 338 U.S. 885, 70 S.Ct. 188, 94 L.Ed. 543 (1949) (same). *See also McCarthy v. M & M Transp. Co.,* 160 F.2d 322 (1st Cir.1947), where the court held that a veteran was not entitled to any reemployment rights when he returned to work following his induction and was fired for cause before entering active duty. The court ruled that the veteran failed to prove that he left his job in order to perform training or service as his status at the time he began active duty was only that of a discharged employee.

8. As plaintiff produced no such evidence, we need not define the point, if any, at which the time between the last day of work and the signing of an enlistment contract becomes so great as to require a court to hold, as a matter of law, that an employee did not leave his job "in order to perform" military service.

fire him for cause, even though the employee may have been unaware of the employer's decision at the time he stopped working.

No one factor alone requires the result we reach here. Rather, our decision is based on a consideration of all of the circumstances present in this case. We have found no other cases where a returning veteran prevailed when (1) the employee was in a non-deferred job classification; (2) at the time of his or her last day of work, the employee had not signed a contract with or joined the military or been ordered to report; (3) nearly two months elapsed between the last day of work and signing an enlistment contract; (4) the only evidence of the employee's motive for resigning was his or her own testimony; and (5) plaintiff was about to be fired for cause at the time he or she stopped working. On these facts, the employer is entitled to judgment as a matter of law.

The judgment of the district court is affirmed.