**BOSTON & M. R. R. v. BENTUBO.**

**BENTUBO v. BOSTON & M. R. R.**

Nos. 4211, 4212.

Circuit Court of Appeals, First Circuit.
March 7, 1947.

John De Courcy, of Boston, Mass., for B. & M. R. R.

Searcy L. Johnson, Sp. Asst. to Atty. Gen., Philip W. Yager, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen., Fendall Marbury, Atty., Department of Justice, of Washington D. C., and George F. Garrity, U. S. Atty., and William J. Koen, Asst. U. S. Attorney, both of Boston, Mass., for William Bentubo.

Before MAHONEY and WOODBURY, Circuit Judges, and HEALEY, District Judge.

WOODBURY, Circuit Judge.

These are cross appeals from a judgment ordering a petitioner under § 8 (e) of the Selective Training and Service Act of 1940, 54 Stat. 891, 50 U.S.C.A.Appendix, § 308(e) restored to the employment from which he resigned in order to volunteer for induction into the military service, and in addition awarding him as damages the wages he would have earned in that employment from the date of his application for restoration therein to the date on which he was in fact reemployed,[1] less, however, the amount of his actual earnings in other employment during that interval. The respondent's appeal raises the same question considered by us in Boston & Maine Railroad v. Hayes, 1 Cir., 160 F.2d 325. There is no occasion for us to discuss it any further in this opinion. The petitioner's appeal raises the question of the statutory authority for the District Court's action in reducing his damages by the amount he earned in outside employment while his application for restoration to his former employment with the respondent was pending.

So far as here material § 8(e) of the Act provides that "In case any private employer fails or refuses to comply" with the applicable reemployment provisions of the Act, "the district court of the United States for the district in which such private employer maintains a place of business shall have power", upon application by one entitled to the benefits of those provisions "to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action."

The petitioner contends that this language imposes a "categorical obligation" on private employers to restore returned veterans to their jobs, if they so desire, which is specifically enforceable and therefore "cannot be escaped or evaded by the payment of compensatory damages as an alternative." Hence he says that he is entitled to recover without deduction all the wages he would have earned but for his former employer's unlawful action in refusing promptly to restore him to his job. And he says that Congress must have intended to have its language so interpreted because otherwise not only would veterans be made to "bear the burden of the employer's default" but also there would be a tendency to encourage idleness on the part of veterans who have been wrongfully refused reemployment and who sue for reinstatement.

The respondent on the other hand contends that the provision that district courts "shall have power" as an incident to restoration in employment "to compensate" for "loss of wages", clearly indicates that Congress intended only to make returning veterans who are wrongfully denied reemployment whole, not to redress a public injury; and that to accomplish this end Congress must have intended any award of damages in these cases to be discretionary with the district court. And it says that there is nothing to indicate any abuse of discretion in the action taken by the court below in the case at bar.

Read literally the language of the sub-section supports the respondent's argu-

<hr/>

[1] It appears that while these proceedings were pending the petitioner was reemployed by the respondent, but we are told that his reemployment was only to stop the accumulation of damages so the question of his right to restoration in employment has not become moot.

ment, and we think further support for that argument is to be found in the sub-section's legislative history.

The reemployment provisions of the Selective Training and Service Act of 1940 as originally drafted by the Senate Military Affairs Committee (86 Cong.Rec. 10079, sec. 8(d)) made a private employer's failure or refusal to comply with its terms "an unfair labor practice within the meaning of and for all the purposes of the National Labor Relations Act [29 U.S. C.A. § 151 et seq.]." No doubt had this provision been enacted into law it would have given veterans wrongfully refused reemployment the benefits of the "back pay" provision of § 10(c) of the National Labor Relations Act which directs the Labor Board, upon a finding after the required hearing of an unfair labor practice, "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this chapter." That is to say, it would have given the Labor Board, and presumably also the district courts, since they were given concurrent powers of enforcement and we must assume that Congress intended veterans to have the same remedies regardless of the tribunal to which they might resort, discretionary power both to order reemployment and also incidentally to award back pay or not as might be required in particular cases in order to effectuate the Congressional policy. See Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 189 et seq., 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217.

The foregoing provision, however, was eliminated from subsequent drafts of the Selective Training and Service Act, and the present one, providing that district courts, and district courts only, "shall have power", as an incident to an order directing reemployment "to compensate" veterans wrongfully denied restoration to their former jobs "for any loss of wages" suffered by them because of their employer's unlawful action, was substituted in its stead. Clearly one purpose of this amendment was to eliminate the Labor Board as an agency for enforcing veteran's reemployment rights. But, in view of the language of the amend-

ment and its legislative background, it hardly seems that Congress also intended fundamentally to alter the nature of the rights with respect to reemployment which it had previously given to veterans. Instead it seems to us more likely that Congress in passing the amendment was still thinking in terms of a remedial right to lost wages. Certainly the language of the amendment ("shall have power * * * to compensate * * * for any loss of wages") is more consistent with the granting of a remedy to veterans than with the imposition of a penalty upon their former employers.

And there are still other indications that this is the correct interpretation of § 8(e).

In the first place Congress did not make the right to reemployment absolute. It gave that right only when the employer's circumstances had not so changed as to make it not only not impossible, but also not "unreasonable" for the employer to reemploy the veteran. It must therefore have envisaged the probability that in the future an infinite variety of factual situations would arise, and recognizing the futility of any attempt to prescribe a remedy for every situation, it contented itself with a statement of a public policy and left the application of its policy to particular situations to the sound discretion of the district courts. Having done this with respect to the basic right to reemployment itself, we think it probable that Congress also intended to do the same with respect to the incidental right to wages lost to a veteran by reason of his former employer's unlawful refusal to rehire.

In the second place Senator Wagner in offering the amendment to § 8(e) said: "The amendment simply provides that in addition to entering judgment finding that the employer has violated the law and that the individual is entitled to reemployment, the court *may* also order that he shall receive back pay for lost wages due to the violation of the law." [Italics supplied.] 86 Cong. Rec. 11031.

We pass the proposition that the Act imposes a categorical obligation upon district courts to reduce the damages awarded

in cases of this sort to the extent the court below reduced the petitioner's damages in the case at bar. Our reason for so doing is that we are convinced that Congress intended at least to give district courts discretionary power to reduce damages as was done here, and this is all that has been briefed and argued and all that we need to decide in order to dispose of the instant case.

The judgment of the District Court is affirmed