**THOMPSON v. CHESAPEAKE & O.
RY. CO.**

Civ. No. 402.

District Court, S. D. West Virginia.

Jan. 27, 1948.

L. E. Given, U. S. Atty., of Charleston, W. Va., and Philip A. Baer, Asst. U. S. Atty., of Huntington, W. Va., for petitioner.

Fitzpatrick Strickling & Marshall, C. W. Strickling and A. A. Bolen, all of Huntington, W. Va., for respondent.

HARRY E. WATKINS, District Judge.

Does an employee who has been classified and deferred by his draft board as an essential civilian employee at his employer's request, but who resigns from employment in order to volunteer for induction into the armed services, forfeit his statutory right to be restored, on the satisfactory completion of his military service, to the position from which he resigned, or to one of like seniority, status and pay? Petitioner asks that this question be answered in the affirmative. The respondent says that it should be answered in the negative.

There is no dispute as to the facts. The material facts, briefly stated, are as follows: Petitioner entered the service of respondent railway company in 1936 as a laborer. He was promoted from time to time until 1942 when he was made a first-class painter. As of December, 1943, he was married, with three minor dependent children. At the request of respondent, and over his own protest, he was deferred by his local draft board as an employee essential to railroad operations. He attempted to enlist in the military forces, but was told that he could not be accepted unless he was released from deferred status by respondent. Following its general policy in such matters, respondent refused to release him from deferred status, whereupon he wrote respondent as follows: "Effective Saturday April 8, 1944, I am resigning from the system paint forces. I have tried to get released from the Railway Co. in order to join the military forces, but I find I cannot get released, so I am resigning in order to join." Five days later, (April 15, 1944) he entered the United States Navy as a volunteer inductee. He was honorably discharged on October 19, 1945, and six days later made application to respondent for reemployment in the position from which he resigned, or to one of like seniority, status and pay, which request

was refused. Respondent offered to employ petitioner as a painter helper with less pay than a first-class painter and with seniority from date of reemployment, which petitioner declined to accept. Petitioner pursued no gainful employment until April 1, 1946 when he accepted employment with a grocery store. On August 15, 1946, counsel for respondent received a letter from the United States Attorney stating that petitioner had applied to that office for aid in securing reinstatement with the railway company, and asking what the position of the railway company would be in the matter. In December, 1946, the railway company replied, and furnished the information requested. On February 13, 1947, this action was instituted under Section 8(e) of the Selective Training and Service Act of 1940, as amended, hereinafter called the Act, 54 Stat. 890, 50 U.S.C.A.Appendix, § 308(e), to compel the respondent to reemploy petitioner in his position as first-class painter, and for damages arising out of respondent's failure to reemploy him. The relevant provisions of the Act are as follows:

"8(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer * * *."

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay * * *".

Respondent does not question the fact that petitioner resigned his position with intent to join the military forces. Indeed there could be no other conclusion. The agreed statement of facts shows that when petitioner learned that respondent sought his deferment on occupational grounds, he wrote his local draft board stating that he did not wish to be deferred. When placed in a deferred classification he attempted to enlist in the military forces, but was told that he could not be accepted unless he was released from his deferred status by respondent. When respondent refused to do this, he resigned his position. His letter makes it crystal clear that his resignation was for only one purpose—to join our mili-

tary forces in the pending emergency. He had learned that in no other manner could he secure immediate induction. Five days after his resignation he was in the Navy.

Respondent says that when he resigned, petitioner forfeited his reemployment rights under the Act; that such resignation of his position, even to make it possible for him to enter the military forces, did not constitute a leaving of his position in order to perform training and service; that he left his employment to acquire a nondeferrable status which he hoped would lead to performance of training and service; that his resignation "was an intermediate step, the necessity for which he well realized in order to thwart the policy of his Government" in deciding which men should serve in essential industry and which men should serve in the military forces; and that "such unwarranted action of petitioner did, by chance, result in the fulfilment of his ultimate desires" to join the Navy. The effect of this argument is to say that Congress intended to give reemployment rights only to persons forced or compelled to leave their civilian jobs because of military training and service required of them under the Act. I see no merit in these contentions.

The same argument was advanced in Hayes v. Boston and Maine R. R., D.C., 66 F.Supp. 371, 374, where an employee was deferred by his draft board as an essential railroad worker. When he could not get released from this deferred classification to enter the military service he resigned his position and was inducted into the military service 12 days later. The District Court said: "The Supreme Court in a recent decision has stated the Act must be liberally construed to protect the veteran, cf. Fishgold v. Sullivan Drydock & Repair Corp., et al. [328 U.S. 275], 66 S.Ct. 1105 [90 L. Ed. 1230], and the re-employment benefits of the Act should be extended to a veteran in a deferred class who resigned his employment in order to become available for induction into the armed forces. To become entitled to the re-employment benefits of the Act, it makes no difference, as I read Section 8(b), whether a person resigned his employment before induction or after induction or did not resign at all if he left his employment for the purpose of perform-

ing training and service in the armed forces." On appeal the First Circuit Court of Appeals affirmed. Boston & Maine R. R. v. Hayes, 160 F.2d 325, 326. That court said: "It will suffice to point out that § 8(b) of the bill as it was reported by the Committee to the Senate read, as we have italicized it: 'In the case of any such person who has left a position or by reason of being so inducted into such forces is required to leave a position' etc. This language clearly gave reemployment rights to those who had previously volunteered, but it seems to us equally clear that it gave such rights only to those who, after the passage of the Act, should be compelled to leave their employment by reason of their induction. But the above provision was amended in the Senate to its present form which is: 'In the case of any such person who, in order to perform such training and service, has left or leaves a position', etc., and as so amended the bill passed the Senate and subsequently the House. * * *

"And this interpretation is in accord with the general tenor of the Act. It is not a national service act. It does not attempt to impose over-all controls on the nation's manpower. Its purpose was to increase and train the personnel of the nation's armed forces by compelling military service, and as such, it no doubt tended to discourage volunteering. But it did not go so far as to prevent that practice. On the contrary in § 3(a) it expressly provided that under certain conditions an opportunity to volunteer for induction must be preserved. To be sure one of the conditions imposed is that the volunteer for induction must not be in a deferred classification, but this falls short of prohibiting a man from stepping out of such a classification by leaving his employment.

"We think the court below was correct in interpreting § 8(b) of the Act as granting reemployment rights to any person who resigns from his job as a means of terminating his deferment and thereby making himself available for voluntary induction, provided of course that he does so for the purpose of serving, is accepted, and then actually serves, in the armed forces."

The same question also arose in Bentubo v. Boston, D.C., & M. R. R., 66 F.Supp.

910, and was decided the same way by the same District Judge whose opinion was also affirmed on appeal by the First Circuit Court of Appeals, Boston & M. R. R. v. Bentubo, 160 F.2d 326. There the employee had been placed in IA classification by the local draft board, from which decision his employer appealed. While his case was pending on appeal, he asked the general yard foreman for a release. The petitioner thought this was necessary in order that his application for voluntary induction be accepted. He was refused the release and told that the only way he could get into the armed forces was to resign and lose his reemployment rights. Thereafter he did resign to enter the military service.

A third case, decided by the District Court of the Middle District of Tennessee, on October 24, 1947, holding that the reemployment benefits of the Act should be extended to a veteran in a deferred class who resigned his employment in order to become available for induction into the armed forces is Blackford v. Nashville Gas & Heating Co., D.C., 68 F.Supp. 997.

The only case to support respondent's contentions is that of Rudisill v. The Chesapeake & Ohio Railway Company, 76 F. Supp. 310 decided by District Judge Paul of the Western District of Virginia on October 14, 1947. There an employee who was in a deferred classification at his employer's request, resigned his position "in order that I can establish myself in a nonessential status, so I might be drafted into military service." A few days later he wrote his draft board requesting that he be made available for service in the armed forces, later volunteered for induction and was accepted. After his discharge he was offered employment but was informed that he could not be restored to his seniority because he had resigned his position and that he must come back as a new man. Petitioner refused to accept employment except upon condition that his seniority be restored. Nevertheless, he did later accept employment with his employer without his former seniority and at the time of the suit was still so employed. Judge Paul dismissed the action, holding that an employee who is in a deferred classification, and who resigns his position so that he may be inducted into the military service is not protected by the reemployment provisions of the Act. He cites the case of McCarthy v. M. and M. Transportation Co., 1 Cir., 160 F.2d 322, as supporting such view. I find nothing in the McCarthy opinion cited, or in the opinion of the District Court, McCarthy v. M. and M. Transp. Co., 66 F.Supp. 374, to support such a conclusion. In the McCarthy case the employee was drafted into service on September 3 and elected to enter upon a 21-day inactive duty status, and to defer his actual entry into the army and army life until September 24. He returned to his employment on September 4 and was fired on September 7. The justification of the discharge from employment was not questioned. It was not a case of resignation from employment. The case holds, first, that one who reports for induction with intent of returning home to resume his employment for three more weeks, has not left employment to perform training and service within the meaning of the Act. 66 F.Supp. 374, 375. Secondly, it holds that one who is discharged is not entitled under the Act to reinstatement. The Circuit Court points out that the statute "was intended to return a veteran to the status quo existing prior to his military career", and then says: "This veteran's status was only that of a discharged employee of respondent. To order reinstatement in such a case would be to say that the Act was intended to give a veteran greater rights in this respect than he would have had had he not gone into service." 160 F.2d 324.

■■ Can there be any question about what Congress intended when it used the words in section 8(b) "in the case of any such person who, in order to perform such training and service, has left or leaves a position * * *". As was said in the McCarthy case, those words are clear and unambiguous. The first resort in ascertaining the legislative intent is to give words used in a statute their natural, ordinary and familiar meaning and that meaning will be applied unless Congress has definitely indicated the words in the statute should be construed otherwise. The plain, obvious and rational meaning of a statute is always to be preferred to any cu-

rious, narrow or strained construction. McCarthy v. M. and M. Transp. Co., supra; Western & Southern Life Ins. Co. v. Huwe, 6 Cir., 116 F.2d 1008, 1009.

 These clear words when read in the light of the legislative history of the Act demonstrate that Congress did not intend to limit the reemployment rights of the veteran to those inductees who were required by reason of induction to leave a position. Thompson left his employment with respondent in order to perform training and service in the military forces. His resignation in order to terminate his deferment cannot be used by respondent to deny him the benefits of the Act. Such interpretation is in accord with the ordinary meaning of the words quoted above and the principle laid down in the case of Fishgold v. Sullivan Drydock & Repair Corporation, supra [328 U.S. 275, 66 S.Ct. 1111], that the Act "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need."

 Respondent also says that petitioner has waived any rights that he might have had under the Act. While it is true that respondent heard nothing from petitioner between October 25, 1945, when it declined reemployment in same seniority status, and August, 1946, when it received letter from the office of the United States Attorney, this delay is not sufficient to amount to an abandonment or waiver of all his reemployment rights under the Act. Petitioner is entitled to be reinstated to the position of first-class painter with no reduction in seniority or pay. In addition he is entitled to receive compensation which he would have earned if reemployed in his old position, but only for the period between the institution of this action and the present time, less what petitioner has earned during this same period in other employment. In Kay v. General Cable Corporation, D.C.N.J., 59 F.Supp. 358, 360, Judge Meaney appropriately said: "The Act provides a definite course of procedure whereby the discharged veteran might immediately have recourse to the District Court upon the refusal of an employer to restore him to his former position. The Act contemplates that such action shall be taken immediately upon an employer's refusal to restore and specifically instructs that 'The court shall order a speedy hearing in any such case and shall advance it on the calendar.' It follows that if proceedings are not instituted in the District Court until some six months following the veteran's discharge from service and the employer's refusal to restore him to his former position, notwithstanding that negotiations between the employer and the veteran have been held in the interim, it would be beyond the scope of the Act to compel the employer to compensate for such extended period." Compensation was allowed only from date suit was filed.

In Dacey v. Bethlehem Steel Co., D.C., 66 F.Supp. 161, application for reemployment under the Act was made on or about October 1, 1944, while suit was not begun until about nine months later. The court held that compensation should begin from date suit was started.

In Karas v. Klein, D.C., 70 F.Supp. 469, compensation was limited to the period of unemployment commencing with the institution of suit for the reason that the delay in enforcing the veteran's rights was in no manner the fault of his employer.

The general rule seems to be that compensation should begin when application for reemployment is made. But where the veteran has delayed an unreasonable length of time in enforcing his demands it would be unfair to the employer to compel compensation for the interim period. Dacey v. Bethlehem Steel Co., supra. Suit was not instituted in the instant case until about 16 months after application for reinstatement was made. Petitioner is not entitled to recover compensation for any period prior to date of filing suit.

 While the point has not been raised or discussed by respondent, the court must decide whether certain monthly rehabilitation payments received by the petitioner from the United States since this action was instituted should be deducted in computing the amount of his recovery from respondent. Such payments were deducted in Salter, v. The Beckner Roofing Co., D. C. Ala., 65 F.Supp. 633, but the matter is not discussed and it does not appear from

the opinion whether the veteran raised the point. With all deference I am unable to give an employer who wrongfully refused to reemploy a veteran credit for the monetary benefits of the rehabilitation payments made by the United States Government to the veteran.

The intent of Congress in enacting Section 8 was twofold. As stated by Judge Meaney in Kay v. General Cable Corporation, supra: "It was designed to provide for the rehabilitation of the returning veteran so that he might be equipped to enter a highly competitive world of job finding without the handicap of a long absence from work, as well as to provide for his financial stability for the period of at least one year following his discharge from service. The act aimed, in my opinion, to present an opportunity for men to reacquire dormant skills and to provide an equal opportunity to return to the pursuit of the work for which they have a particular aptitude. Were this not so, it would suffice if the equivalent of one year's salary were paid the veteran if he was unlawfully denied reinstatement by his former employer." The Act provides that the employer who wrongfully denies reinstatement shall compensate the veteran for the loss of wages or benefits suffered by reason of the employer's unlawful action. In this manner Congress provided that the employer should aid the veteran who had been denied reinstatement and thereby prevented from reestablishing himself as a wage earner in his proper field of endeavor.

Congress also realized that the returning veteran would be handicapped because of his absence from his civilian occupation, and provided certain benefits in the nature of gratuitites, which were intended solely for the returning veteran and his dependents. Among these benefits was that provided by Title 38, Ch. 12, Part VIII, Veterans' Regulation No. 1(a), following section 739, of the United States Code Annotated. That statute made it possible for a veteran to enter school or to enter upon a new trade as an apprentice and to receive a subsistence allowance from the government while in such school or while working as such apprentice. This money

was a gift to him from his government, not to supplement any earnings of the veteran in civilian employment, but only as a subsistence allowance, the amount of which depended upon whether the veteran had one or more dependents. Congress did not intend to benefit an employer who wrongfully refused to reinstate a returning veteran by allowing it to deduct such subsistence allowance from the amount to be paid by such employer. To do this would be to permit the employer to be benefited at the expense, first, of a returning service man for whose exclusive benefit such subsistence allowance was designed, and, secondly, at the expense of the United States whose Congress intended to provide these funds to be exclusively for the subsistence and rehabilitation of veterans. If both the money earned in the new employment and the subsistence allowances were deducted, it would encourage the employer to refuse to reemploy a veteran because in many cases the two amounts would exceed the old wage, and the compensation provisions of the Act would mean nothing.

In Hoyer v. United Dressed Beef Co., D.C.Cal., 67 F.Supp. 730, 734, the employer refused to reinstate a veteran and the court held that readjustment allowance payments of $100 per month paid to the veteran by the government under the Servicemen's Readjustment Act should not be deducted. Judge Yankwich said: "If anyone is entitled to reimbursement, it is certainly not the employer, but the Government. But, in reality, the allowance is not 'earnings'. Where one seeking reinstatement has been employed in the meantime, his 'earnings' would be deductible from the award. The payments here were made to the veteran, through the munificence of the Government, which thereby made up for the delinquency of the employer. They should not be deducted." Likewise the courts have held that unemployment benefits under state law or from a union unemployment fund are not "earnings" for which the employer should receive credit. Marshall Field & Co. v. National Labor Relations Board, 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744; National Labor Relations Board v. Isthmian S. S. Co., 2 Cir., 126 F.2d 598; National Labor Relations

310

Board v. Brashear Freight Lines, 8 Cir., 127 F.2d 198.

In Troy v. Mohawk Shop, Inc., D.C., 67 F.Supp. 721, cited the Hoyer case with approval and held that payments under the Servicemen's Readjustment Act were not "earnings" in other employment and that the employer was not entitled to credit such payments against loss of wages caused by employer's failure to reemploy veteran in his former position. Servicemen's Readjustment Act of 1944, § 902, 38 U.S.C.A. § 696d.

The parties will make the computation as to damages and submit the same to this court with an appropriate order for approval.