## LOKER v. ALLIED BUILDING CREDITS, Inc.

No. 4561.

United States District Court
W. D. Missouri, W. D.

Dec. 7, 1948.

See, also, D. C., 7 F.R.D. 358.

Thomas Moxcey, of Atchison, Kan., and Terrell & Slaughter, of Kansas City, Mo., for plaintiff.

Stinson, Mag, Thomson, McEvers & Fizzell, of Kansas City, Mo. (Lawrence R. Brown, of Kansas City, Mo., of counsel), for defendant.

REEVES, Chief Judge.

This is an action for overtime compensation under the provisions of Section 216, Title 29 U.S.C.A. By a second count plaintiff seeks damages for an alleged violation of Section 308, Title 50 App.U.S.C.A. relating to the subject of reemployment under the Selective Service Act.

When the Fair Labor Standards Act became effective October 24, 1938, plaintiff was then an employee of the defendant as a field credit man but characterized by the plaintiff in his testimony as a special representative. Plaintiff sues for overtime recovery in his own behalf and for others similarly situated. He claims overtime from the effective date of the Fair Labor Standards Act until the termination of his employment November 30, 1942. He also seeks damages from the time he made demand upon the defendant for his reemployment after his army or naval service until he was reemployed.

The evidence on the part of the plaintiff tended to show that his employment required him to travel over several states as a field or special representative of the defendant and that it was his business to sell the service (credit) of the defendant. His dealings were largely, if not entirely, with lumber dealers. This consisted of interviews, involving the desirability and utility of the defendant's service. Such interviews were sometimes had in the evening by special authorization of the defendant. The plaintiff attended conventions where opportunities to meet patrons were facilitated. Such attendance was authorized by the defendant and often this involved long drives by automobile to the place where the convention was to be held. The automobiles used by plaintiff were owned by the defendant and all expenses incurred were paid by the defendant. The plaintiff used his own discretion as to his work hours and was on a salary increasing from time to time from $125 to $200 a month on April 1st, 1942. In his testimony plaintiff said that his work time was a minimum of sixty hours per week. In a letter written by plaintiff in 1939 to the defendant he indicated that his work time averaged sixty hours per week.

On the Second Count of his complaint plaintiff said that he resigned his employment with the defendant on November 30, 1942, and that, following this resignation, in December, 1942, he applied for a commission as an officer in the United States Navy, that he was given a commission and took the oath of office on January 11, 1943, but was not called to service until some time in May, 1943. In the meantime he was employed by other employers through December and until he was actually called to service in May 1943. During that time he was substantially compensated in his new employment. After his return late in 1945 he negotiated with the defendant for his reemployment but the defendant refused to employ him on the ground that he had been employed elsewhere at the time he entered the service and that his application for reemployment should be made to his later employers.

The defendant on its part showed that the plaintiff was employed in an advisory capacity with respect to the policies of the defendant and that he sat in council in an advisory capacity, that neither the plaintiff nor the defendant was aware that the defendant was liable for overtime in the plaintiff's employment and both proceeded upon the theory that defendant was not liable, that the plaintiff exercised his own discretion in reference to his hours of work and was at liberty to proceed in accordance with his own judgment and was not instructed to work overtime.

Many witnesses for the defendant who were in a service similar to that of plaintiff testified that they were associated with the plaintiff part of the time during the years of his employment and that he never

worked beyond forty hours per week; that his day's work began from 8:30 to 10 A. M., and that it ended from 4:30 to 5 P. M.; that only occasionally were there evening interviews; that no work was done on Saturday and holidays; that in fact the office in Kansas City closed on Saturday afternoons. These witnesses also testified that the plaintiff took time off for recreation and spent much time supervising the building of a home constructed by him in Kansas City. The defendant's witnesses were associated with him at different times for varying periods.

It is the contention of the defendant that plaintiff failed to prove his case by a preponderance of the evidence and that on the second count the plaintiff not only failed to establish his right to reemployment, but, even so, he failed to show damages. All of these will be noticed. The Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., does not apply for the reason that all of plaintiff's services were compensable.

1. Since there is no controversy but that the defendant was engaged in interstate commence, there is no occasion to discuss that phase. No question has been raised and no issue made of the nature of the work in which defendant was engaged. Plaintiff's statement in his complaint that his services affected interstate commerce must be accepted, therefore, as true, and particularly in view of the failure of the defendant to deny his averment.

2. Section 207, Title 29 U.S.C.A., provides that: "No employer shall * * * employ any of his employees * * * (1) for a workweek longer than forty-four hours during the first year from the effective date of this section, * * *."

Then there is a reduction to forty-two hours for the second year and to forty hours after the second year of the law becoming effective October 24, 1938, "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Admittedly the plaintiff was not, by reason of regulations of the Labor Department, entitled to extra compensation for overtime after his salary increase to $200 per month from and after April 1, 1942.

3. As indicated, the evidence was strongly contradictory as to the overtime work by the plaintiff. Many witnesses who were associated with plaintiff said that he did not work overtime as stated by him in his testimony. In his testimony the plaintiff was positive that he worked the minimum of sixty hours per week. This was contradicted by four witnesses, Roger King, Marshall Meyer, W. C. Hanly, and Roy Temple. Moreover, in 1939 plaintiff wrote his employer that his time devoted to the business of defendant averaged sixty hours per week. Nine years later he testified that he worked a minimum of sixty hours per week. He was unable to give dates, save in a few instances, where he drove to business points or to places of holding conventions.

4. In the case of Jax Beer Co. v. Redfern, 124 F.2d 172, loc. cit. 175, the Court of Appeals, 5th Circuit, said: "Neither plaintiff was able to testify as to the number of hours worked each day, but each testified that 'on an average' they worked from seven o'clock in the morning until nine o'clock at night."

Upon such testimony the Court of Appeals reversed the trial judge upon the theory that the plaintiffs failed to establish a case. The overwhelming preponderance of the testimony in this case was that the plaintiff did not work overtime. Furthermore, he was employed under such circumstances that he kept his own time and used his own discretion as to the time worked. On a claim for overtime on such employment plaintiff should have been able to specify with precision how long and when he had worked and the circumstances that caused his overtime services. He was in the field many miles from the home office of the defendant and it had no method whereby it could check upon the services rendered by the plaintiff. It was necessary for him to keep his own time and to acquaint the defendant with the hours he worked. It would be speculative and conjectural for the plaintiff at this late time to claim overtime compensation for work that he believed he rendered and that en-

146

titled him to claim overtime compensation. The several witnesses mentioned contradicted his testimony so positively that the court should not accept his testimony that he worked at least sixty hours per week as establishing his right to recovery.

5. The case of Murdick v. Cities Service Oil Co., 10 Cir., 145 F.2d 231, 232, does not aid plaintiff. In that case the plaintiff was in sole charge of a water station. When he was hired he was told that "'it was a 24 hour job.'" The plaintiff testified positively, "'I was there working twelve hours a day.'" There was no other proof, and the Court of Appeals said that this was sufficient to warrant a judgment for overtime. In the instant case the plaintiff performed no manual labor.

█ It must be held that plaintiff's proof was insufficient to establish a claim for overtime but, that, even so, the preponderance of the evidence was that he did not work the overtime claimed by him.

6. On Count Two of the complaint—the statute, Section 308, Title 50 U.S.C.A.Appendix, relating to Selective Service, provides:

"(b) In the case of any such person who, *in order to perform such training and service,* (italics mine) has left or leaves a position, * * * in the employ of any employer * * * and (3) makes application for reemployment within ninety days after he is relieved from such training and service. * * *

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position * * *."

It is undisputed that the plaintiff sought reemployment within ninety days after his discharge from the service and there is no question but that the defendant refused to reemploy the plaintiff and did so for the assigned reason that the plaintiff had employment elsewhere at the time he was called to military or naval service. The evidence showed that the plaintiff resigned his position with the defendant on November 30, 1942, and that shortly thereafter he made application for an official position in the navy; that he was later accepted, and that, on January 11, 1943 he took the oath of office; but that he was not called to naval service until May 12, 1943, and, that, in the meantime, he was gainfully employed with employers other than defendant. He continued with his last employer at a good wage for nearly four months before he was called to actual duty or service in the navy.

7. The case of Boston & M. R. R. v. Bentubo, 1 Cir., 160 F.2d 326, by analogy does not help the plaintiff. In that case the claimant resigned his employment in order to volunteer for induction into the military service. Emphasis in that case was placed upon the fact that it was within the power of the court to reduce the damages that might otherwise have accrued to the soldier because of his earnings in outside employment while his application for restoration was pending. In this case the plaintiff had employment for more than five months after he resigned from the defendant's employ and upon his return from the service he was quickly employed at a really better wage than that obtainable from the defendant.

8. From the facts in the case it does not appear that when plaintiff resigned his employment on November 30, 1942, he was under the compulsion of a call to military or naval service. On the contrary, plaintiff's resignation was followed within a brief time thereafter by an application for an official position in the navy. The circumstances were such that he took other employment and continued in such employment for a period of almost six months after his resignation.

█ 9. The statute contemplated a right of reemployment in those cases where the soldier or sailor "has left or leaves a position" "in order to perform such training and service". It certainly did not contemplate a case where an employee would spend almost six months in other employment before he actually entered upon his country's service and then claim the right of reemployment in his service of an original or former employer.

10. In addition to the foregoing the plaintiff not only failed to show any damages accruing to him, but, on the contrary, the evidence was that he obtained immediately advantageous and profitable em-

ployment superior to that he had held with the defendant.

Under such circumstances the plaintiff is not entitled to recover damages on the second count of his complaint and judgment should be for the defendant.