**LEVINE v. BERMAN et al. (two cases).**
**Nos. 9773, 9781.**

United States Court of Appeals
Seventh Circuit.
Dec. 19, 1949.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski and Maurice C. Handelman, Asst. U. S. Attys., Chicago, Illinois, for Ernest L. Levine.

J. Roy Browning, Richard Rex Parkin, Chicago Illinois (J. Herzl Segal, Chicago, Ill., of counsel), for David H. Berman.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

Petitioner, a veteran, brought suit against respondents for restoration to his pre-war position, pursuant to the provisions of the Selective Training and Service Act of 1940, § 8, as amended, 50 U.S.C.A.Appendix, § 308. From an adverse decision petitioner appealed, and this court, holding that he was entitled to restoration as of Decem-

ber 18, 1945, reversed the decree, with directions to the District Court to proceed in accordance with our opinion. Levine v. Berman, 7 Cir., 161 F.2d 386. Our mandate was filed in the court below October 28, 1947, whereupon petitioner applied for an order of restoration and an award of damages allegedly sustained because of respondents' previous failure to restore him. On December 23, 1947, the court in response to our mandate entered its order directing that respondents forthwith restore petitioner to his former position. The court reserved jurisdiction to enter such further orders "as may be appropriate and meet for the granting of full relief to the parties herein." Immediately thereupon respondents offered, as directed, to restore petitioner, which offer was by him refused.

On February 10, 1948, the court referred the matter to a Master-in-Chancery "to hear and consider all the issues, whether of law or fact or both, remaining undetermined in this cause and to take testimony and receive evidence if such is necessary to a determination of the issues." The principal issue before the Master was whether petitioner was entitled to an accounting for damages resulting from respondents' failure to restore him to his former position and, if so, in what amount. After rather extensive hearings the Master filed a report, together with his findings of fact and conclusions of law, and recommended that recovery of damages be denied. The court in its order of September 30, 1948 overruled petitioner's objections to the Master's report, approved and confirmed the same in all respects and dismissed his petition for damages. The court in the same order taxed the costs of the proceedings to respondents, including the Master's fees and expenses in the sum of $2,000.

■ Petitioner in No. 9773 appeals from that portion of the order denying his claim for damages, and respondents in No. 9781 from that part of the order taxing the costs against them. We shall first consider petitioner's appeal. The findings of the Master upon which recovery was denied are vigorously assailed by petitioner in the main upon three grounds, (1) that they are not supported by the evidence, (2) that they are at least in some respects beyond the scope of the mandate issued pursuant to our former opinion, and (3) that in any event the statute imposed a mandatory duty upon the court to award damages. We shall not undertake to detail the evidence heard by the Master. It is sufficient that we have read it and are of the view that it supports the findings. This being so, we must accept them insofar as relevant. Therefore, the material questions for consideration are whether the findings are in conflict with our former opinion and, if so, to what extent, and whether they support the judgment.

■ We agree, of course, that we are bound by the previous holding of this court, but our problem is to determine its relevancy to petitioner's right to an award of damages. As our opinion discloses, no question of damages was previously before us. The sole question was the character of position to which petitioner was entitled to be restored. The gist of our holding in this respect is stated thus, 161 F.2d at page 389: "Did the respondent offer the petitioner a position with status and pay as nearly like his former status and pay as possible in view of the changed circumstances of the respondent's business? From what we have said above, it is apparent that we do not think so. The petitioner was offered a territory, not his old territory. He was not offered his old commission of ten per cent * * *. Such offers as to territory and commission do not square with his status and pay before he entered the service and do not satisfy the statute."

As to petitioner's pay, we stated, 161 F.2d at page 388: "Since he was receiving ten per cent on 'Tumble Twist' rugs when he went into service and other salesmen were receiving ten per cent commission on these rugs at the time the petitioner applied on December 18, 1945 for his old job and for some time thereafter, he was entitled to be restored at his old commission."

■ While in the view we take it is not necessary to discuss petitioner's theory as

to his measure of damages, we think it illuminating to point out his claim as it shows the mistaken view entertained by him both as to our previous holding and his statutory right. It is claimed that because of our decision he is entitled to recover ten per cent of the gross sales in the designated territory from December 18, 1945, when restoration was denied, to December 23, 1947, the date of the order of restoration following our mandate. This amounts to the rather fantastic sum of $52,500. This is a misconception of our decision. What we held and all we could properly have held under the issue before us was that petitioner was entitled to be restored to such a position as of December 18, 1945. But this does not mean that he was entitled to receive such commission indefinitely. As the Supreme Court has held, he was entitled to be placed back on the "escalator" at the point he stepped off. Fishgold v. Sullivan Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L. R. 110. In other words, he was entitled to be restored to the same character of employment, including pay, which would have been his had he not entered the service, and respondents had a right at any time to reduce his pay or commission in the same manner as though he had been in continuous employment, provided such reduction applied to all other positions of the same or similar nature.

The Master found: "The petitioner's demanded terms and his refusal to accept reemployment upon the respondents' proffered terms were apparently not in good faith but the petitioner acted in the manner that he did with the apparent intention and motive of laying a foundation for a future claim for money damages against the respondents."

While the question of petitioner's good faith apparently was not raised or discussed in our previous opinion, we suppose our holding might be construed to find good faith, impliedly at least; however, we know of no reason why in the instant proceeding the Master, in view of subsequent events, might not find that he was lacking in good faith from the beginning. In any event, this finding was only the beginning of a course of conduct which the Master found petitioner pursued from the date restoration was refused until the court's order, subsequent to our mandate, directing restoration.

The Master found that petitioner subsequent to January 1, 1946 demanded of the respondents that he be paid a sum of $25,000 in lieu of his statutory right of reemployment and that "The action of the petitioner in this respect was apparently taken in furtherance of his plan to induce the respondents to pay him money in lieu of restoring him to his former position as required by law and petitioner did not thereby act in good faith." It was found that petitioner in January 1946 was engaged by Floor Coverings, Inc., as a salesman "but would not accept compensation therefor for the stated reason that he was endeavoring to learn the rug business, but in truth and in fact his refusal to accept compensation * * * was in furtherance of his plan to induce and compel the respondents to make a cash settlement with him, and such action on the part of the petitioner was not in good faith." It was found that petitioner's failure to accept or secure other employment from January 1, 1946 until the District Court dismissed his petition in May 1946 "was in furtherance of his plan to induce and compel the respondents to make a cash settlement with him, and such failure to accept or secure other work during that time was in bad faith." It was found that at the time petitioner made his application to the District Court for an order on the respondents to restore him to reemloyment in November 1947, and at the time the District Court entered its order compelling reemployment on December 23, 1947, petitioner was employed in a position more satisfactory to him than his former position with the respondents, and at the time petitioner made such application he did not intend to accept reemployment by respondents but sought such order "as a basis for his claim of damages against the respondents for their failure to reemploy him on December 18, 1945." And it was found that petitioner's application in this respect "was not made in good faith," and that it

was made "for the sole and only purpose of laying a foundation for his claim for money damages against the respondents."

It was further found that petitioner at the hearing before the Master "willfully and knowingly swore falsely to a material matter in that he denied that he had stated to three witnesses in January, 1946, that he had been offered employment as a salesman for Floor Coverings, Inc. but would not take the position because he was waiting to see how much he could get out of the respondents, although the said three witnesses, each disinterested in this proceeding, testified that petitioner made such a statement to each of them on several occasions in January, 1946," and further that "The false and contradictory testimony of the petitioner, together with his demeanor, while on the witness stand and during the hearing before the Master, justifies the complete disregard of all of his uncorroborated testimony, and such action on the part of the petitioner was not in good faith." And finally the Master found: "To allow, in whole or in part, petitioner's exorbitant claim for damages in the sum of $41,696.55 against the respondent based, at least in part, on fraud and deceit and sought to be supported, at least in part, by perjured testimony would, in the opinion of the Master, do violence to legal and equitable principles, and would tend to encourage unscrupulous demands and litigations." Upon these findings the Master entered his conclusions, one of which is: "The petitioner's application for compensation is tainted with deceit and bad faith, and under the equitable maxim that he who comes into equity must come with clean hands the petitioner is not entitled to any relief, and the petition should be dismissed."

In view of these findings, the question arises as to whether petitioner was entitled as a matter of law and right to an award of damages, or whether it was within the discretion of the court to deny such allowance.

Our decision in the previous case rests upon Sec. 308(b) (B), which provides for restoration under the circumstances enumerated. In the instant matter the claim for damages is predicated upon subsection (e), which provides, so far as here material, "In case any private employer fails or refuses to comply with the provisions of subsection (b) * * *, the district court of the United States * * * shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." The argument here revolves in the main around the words "shall have power" and "as an incident thereto, to compensate such person." Respondents contend that by this provision the court had a discretion as to whether an award of damages should be made as an incident to restoration and that there was no abuse of discretion on the part of the court in view of the Master's findings. Petitioner contends that the court is without discretion and that damages must be awarded in any event. This argument is based upon the premise that the words "shall have power" are a mandatory direction to award damages.

We are of the view that respondents' theory as to the interpretation of this provision must be accepted. In Doane Co. v. Martin, 1 Cir., 164 F.2d 537, 541, the court stated: "The Act provides that the district court shall have power to compensate him for any loss of wages resulting from an employer's unlawful refusal to reinstate him to his former position. As was said in Bentubo v. Boston and Maine Railroad, 1 Cir., 160 F.2d 326, the district courts have discretionary power to reduce the damages under the Act. Moreover, in Van Doren v. Van Doren Laundry Service, D.C.N.J.1946, 68 F.Supp. 938, 941 it was held that in the exercise of this power the district court may award no damages. Under the general rule of damages where one is injured or damaged by the wrongful act of another, he is bound to exercise reasonable care and diligence in mitigating the resulting damage. The Act was intended for the benefit of the veteran and not to penalize the employer."

In Boston & M. R. R. v. Bentubo, 1 Cir., 160 F.2d 326, 327, the court, after reviewing the legislative history of the provision, concluded that Congress "must have intended any award of damages in these cases to be discretionary with the district court."

In Van Doren v. Van Doren Laundry Service, Inc., 3 Cir., 162 F.2d 1007, a judgment refusing to allow damages was reversed on the ground that the lower court abused its discretion.

In Tsang v. Kan, 9 Cir., 173 F.2d 204, it was held that the words "shall have power" were for the purpose of conferring jurisdiction upon the federal court to entertain a suit for damages, and that otherwise, in the absence of diversity jurisdiction, the federal court would be without jurisdiction.

The language has been similarly construed in O'Connor v. Yardley Golf Club, D.C., 79 F.Supp. 264, and in Flynn et al. v. Ward Leonard Electric Co., D.C., 84 F.Supp. 399.

Congress has laid down no yardstick by which to measure the damages recoverable by a person who has been wrongfully refused restoration to his former position. Such being the case, the right to recover as well as the extent must be determined by the ordinary rules controlling in any other kind of an action where damages are sought as a result of the wrongful act of the other party. Petitioner, while contending that he is entitled to an award of damages as a matter of right, appears to concede the obligation on his part to minimize damages because in his calculations he concedes respondents are entitled to credit for certain amounts which the record shows petitioner earned prior to the entry of the order of restoration. If the court has the discretionary power, as we think it has, to determine the amount of the allowance, it would seem to follow that it has such power to deny such allowance in toto for good and sufficient cause. Here, it was because of petitioner's lack of good faith, and his deceit and fraud as found by the Master. Under such circumstances we cannot say that the order denying compensation was improper.

Respondents' appeal in No. 9781 presents a rather anomalous situation. Ordinarily, of course, costs are taxed against the losing and not the prevailing party. Subsection (e), however, provides "That no fees or court costs shall be taxed against the person so applying for such benefits." We recognize that petitioner's immunization from costs is a flimsy ground for taxing them to respondents, the prevailing party. The taxation of costs, however, is a matter concerning which the court has wide discretion, and this is not the usual situation of a prevailing and losing party. After all, respondents erected the premise upon which the instant action for damages was predicated. They did this according to our former decision by refusing to restore petitioner to his pre-war position. That question was litigated and respondents lost, and the instant proceeding was an aftermath thereof. Under the peculiar circumstances, we cannot say that the court abused its discretion in the matter of the taxation of costs.

It follows from the views expressed that the order appealed from must be affirmed in toto. It is so ordered.