EPIFANIO BERRÍOS, Complainant, Appellant, and Appellee, *v.* EASTERN SUGAR ASSOCIATES, (A TRUST) ETC., Respondent, Appellee, and Appellant.

No. 12631. Decided April 2, 1962.

114

*Epifanio Berríos* on his own behalf as complainant, appellant, and appellee. *Fiddler, González, Guillemard* and *Rodríguez* (*Eduardo Negrón Rodríguez* on the brief) for respondent, appellee, and appellant.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On April 21, 1952, workman Epifanio Berríos addressed a letter to the Department of Labor informing that the enterprise Eastern Sugar Associates to which he rendered services as seaman on a tugboat in the Playa de Humacao was not complying with the provisions of law applicable to the payment of the wages actually earned.[1] Approximately fifty days later the employer notified Berríos, who at the time was 68 years old, that he would cease in the employment on the last day of that month so that he could avail himself of the old-age benefits provided by the Federal Social Security Act, 42 U.S.C.A. § 401 *et seq.* As of June 30, 1952, and except for a few sporadic occasions when he worked during the following semester, the complainant did not continue to render services to his former employer.

---

[1] This letter was the commencement of the action which culminated in a judicial intervention finally decided in *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647 (1956). The judicial complaint was filed on August 18, 1952, namely, *after* Berríos ceased in his employment.

As of August 1952, the claimant started to receive personally old-age benefits of sixty-three dollars ($63) monthly and an additional amount of sixty-eight dollars ($68) for his minor children. In October 1955, the personal monthly benefit was increased to seventy dollars and ten cents ($70.10). In other words, Berríos received one hundred and thirty-one dollars ($131) monthly until October 1955, and one hundred and thirty-eight dollars and ten cents ($138.10) from that date until the trial held in the court below.

Approximately thirty months after ceasing in the employment, on December 23, 1954, Berríos brought an action in his own right against Eastern Sugar Associates [2] alleging that he had been illegally discharged, and requested (a) his reinstatement in the employment which he held with that employer, or in one substantially similar; and (b) that the employer be ordered to pay him the damages sustained "by way of unpaid wages," at the rate of $34.32 weekly from and after the discharge, and for "the moral sufferings, anguish, and despair" experienced. He invoked as ground for his claim the provisions of § 19 of the Minimum Wage Act of 1941—Act No. 8 of April 5, 1941 (Sess. Laws, p. 302; 29 L.P.R.A. § 230).

It was not until October 18, 1956 that the trial court ordered that the defendant be summoned.[3] Service was made on the following October 26. From the foregoing it appears that the employer was apprised of the workman's interest in being reinstated in the employment when 4 years and 4 months had already elapsed and 1 year and 10 months

---

[2] In the course of the trial the allegations were amended in order to substitute as defendant the Fajardo Eastern Sugar Associates for the original defendant. It was so ordered.

[3] On September 21, 1955, judgment dismissing the complaint was entered pursuant to the provisions of Rule 11 of the Rules for the Administration of Courts, because the action had been inactive for more than six months. This judgment was afterwards set aside, but 13 months elapsed before the complainant moved for an order to summon the defendant.

since the commencement of the action. On this date Berríos had already attained 72 years of age.

After holding the corresponding hearing, the trial court rendered judgment containing the following pronouncements: it ordered respondent (1) to reinstate the complainant in his employment as seaman or in one substantially similar; (2) to pay him the sum of $34.32 for every week elapsed since October 26, 1956—date of service of summons—until the date in which he would be reinstated or offered to be reinstated; and (3) to pay the sum of $500 for attorney's fees. Both parties appealed.

Section 19 of the Minimum Wage Act of 1941 to which we have referred reads as follows: [4]

"Every employer who discharges, suspends, refuses to admit or reinstate, reduces the wages, lowers the category, increases the working hours of, or imposes more onerous working conditions on, discriminates or threatens to do any of these acts to evade compliance with any decree or because said employee or ex-employee may have complained, offered or given testimony, or is willing to offer or give it, or because he believes that he may offer or give it, in any investigation, complaint, or claim made, or hearing held, or administrative or judicial proceeding heretofore or hereafter carried out in relation to, or for the application of, this chapter or of any decree, regulation, resolution, or agreement of the board, or because he may have served, is serving, or intends to serve as a special member of the Minimum Wage Board, shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of from one hundred (100) to one thousand (1,000) dollars, or shall be imprisoned in jail for a term of from one (1) month to six (6) months, or shall suffer both penalties, in the discretion of the court.

"It shall be presumed that any of the said acts are due to the filing of a complaint or to the offering or giving of testimony, or to the willingness to offer or give the same, or to the belief that the same will be offered or given, or to service in the board,

[4] Identical provisions were incorporated in the Minimum Wage Act of 1956 by § 24 of Act No. 96 of June 26, 1956 (Sess. Laws, p. 622, 29 L.P.R.A. Supp., § 245w).

as the case may be, when the employer has performed the act before the expiration of six months after the end of the investigation, complaint, claim, hearing, proceeding, or service in the board, unless it is satisfactorily shown by the employer that he has stated the purpose he really had to the employee or ex-employee before the investigation, complaint, claim, hearing, proceeding, or proposal to serve in the board, existed.

"The employer shall reinstate the laborer in his employment or cease to continue the act in question. To oblige him to act as herein determined, the Superior and District courts shall have cognizance concurrently of simple, rapid, and preferential proceedings, in which the interested parties and the board shall be given an opportunity to be heard. In said proceedings there shall also be investigated the damages which the act may have caused the employee or ex-employee, in whose favor judgment shall be rendered for double the amount of the damages caused, in addition to granting him costs and a reasonable sum, which shall never be less than fifty (50) dollars for attorney's fees."

■■■■ 1. The Act establishes a presumption whenever the employer has discharged, suspended, refused to admit or reinstate the workman, or has reduced his wages, lowered the category, increased the working hours, or imposed more onerous working conditions, provided such act has been performed within six months after the termination of the investigation, complaint, claim, hearing, or proceeding, or functions of the Minimum Wage Board. In *Cadilla* v. *Condado Beach Hotel*, 70 P.R.R. 869 (1950), we defined the scope of this presumption and stated that such presumption is rebuttable, and that once it is established that the discriminatory act was performed within the six-months period provided by law, it was incumbent on the employer to show that such act was not due to discrimination. In *Limardo* v. *Eastern Sugar Associates*, 84 P.R.R. 259 (1961), where a workman was discharged after filing a claim for wages, we held that "Actually, it is only necessary that the employer prove to satisfaction that the change in the working conditions does not constitute a reprisal for having brought an action

claiming wages," and that "there may be circumstances in which a change unfavorable to the laborer may have taken place and yet there is no cause of action." In the instant case the trial court applied the presumption after considering and deciding adversely the defense set up by the employer to the effect that the complainant's discharge was due to a policy of the enterprise to retire from employment all employees eligible to receive the benefits of the Federal Social Security Act. The parties as well as the court considered the letter of April 21, 1952, sent by the workman to the Department of Labor, as the starting point for the application of the presumption because the discriminatory act occurred within the six-months period after sending the letter in question.

 The original legislative intention in enacting § 19 of the Minimum Wage Act was to encourage the appearance of workmen and employees to give testimony in proceedings relating to the fixing of minimum wages and the establishment of working conditions in the different industries and activities. Later in 1945—Act No. 217 of May 11, 1945 (Sess. Laws, p. 680)—the field of the application of the section was enlarged and the provisions prescribing the civil sanction were added, see *Limardo* v. *Eastern Sugar Associates*, 84 P.R.R. 259 (1961), for the purpose of averting the consequences of employers' discriminatory acts against workers claiming, either administratively or judicially, payment of the benefits provided by labor laws or regulations or minimum-wage decrees. To a certain extent this constitutes an incursion in the field of collective bargaining. In any event, it was clearly indicative of the public policy to avert acts which could be attributed to an intention to discriminate or reprise, even if by so doing the employer's power to contract or discharge his workmen and employees were limited by provision of law. So far the only legal consequence imposed on the employer for the discharge without just cause was the payment to the workman of one month's salary or wages,

by way of indemnity, as provided by Act No. 84 of May 12, 1943 (Sess. Laws, p. 196).[5] However, as of the enactment of Act No. 217 of 1945, *supra*, reinstatement in the employment is also ordered whenever certain circumstances indicative of a discriminatory discharge are present. The Act itself presupposes prompt action, the purpose of which is to render immediate aid to the aggrieved workman, in providing that in order to compel the employer to reinstate the workman or to cease his discriminatory conduct, the courts shall have cognizance of "simple, rapid, and preferential proceedings." It could not have been the legislative intention to provide a remedy to be exercised by the workman at any time after ceasing to render services, regardless of the remoteness of the discharge date. Construing a similar provision of the Selective Service Act of 1940, 50 U.S.C.A. App., § 308(e), requiring reinstatement of veterans in the positions they occupied on the induction date, it was said in *Daniels* v. *Barfield*, 77 F. Supp. 283, 285 (Pa. 1948), that "the very essence of this provision of the Act is that of promptness. Delay not only deprives the Court of the opportunity of rendering prompt aid to those entitled to it but places the defendant at a disadvantage in being lulled into a false sense of security. I am of the opinion that the delay on the part of the plaintiff [seven months after discharge to make demand for reinstatement] was unreasonable and amounts to acquiescence in the action of the defendants and accordingly results in a forfeiture of his right to reinstatement and of the incidental right to demand compensation for loss of wages and benefits." See, also, *Leonick* v. *Jones & Laughlin Steel Corporation*, 258 F.2d 48 (C.A. 2, 1958); *Donner* v. *Levine*, 232 F.2d 185 (C.A. 2, 1956); *Hicks* v. *United States Radiator Company*, 127 F. Supp. 429 (Mich.

[5] This Act was superseded by Act No. 50 of April 20, 1949 (Sess. Laws, p. 126, 29 L.P.R.A. § 183), which also imposed on the employer by virtue of § 3 the obligation to allege in his answer the facts which caused the discharge and to prove that such discharge was justified.

1955); *Noble* v. *International Nickel Co.*, 77 F. Supp. 352 (W. Va. 1948); *contra, Thompson* v. *Chesapeake & O. Ry. Co.*, 76 F. Supp. 304 (W. Va. 1948); *cf. Dacey* v. *Bethlehem Steel Co.*, 66 F. Supp. 161 (Mass. 1946). Nor is the trier precluded from investigating the good faith of the claimant. *Levine* v. *Berman*, 178 F.2d 440 (C.C.A. 7, 1949). The claimant's intention to recover his old employment was made known precisely, for all practical purposes, 4 years and 4 months after his discharge, for pure reasons of personal convenience of the alleged aggrieved party. Let us see.

As stated above, Berríos has been receiving the old-age benefits provided by the Federal Social Security Act since one month after the date of his discharge. Section 404.408 of the pertinent regulations 20 C.F.R. 405–06 (1961),[6] provides as follows in the portion covering the present situation:

"§ 404.408. *Deductions imposed because an individual works.*

"(a) *When deductions imposed.* Deductions are to be made from any benefit or benefits payable to an individual and from any wife's, child's, or husband's insurance benefits payable to his wife, child, or husband with respect to such individual's wages and self-employment income for any month:

"(1) Prior to September 1952, in which such individual *under age 75* renders services for wages . . . of more than $50, or

"(2) After August 1952 and prior to the first month of individual's first taxable year beginning after 1954, in which such individual was under age 75, with respect to months prior to 1955, or *under age 72*, with respect to months after 1954, and in which he renders services for wages. . . of more than $75, or

"(3) In which such individual is charged. . . net earnings from self-employment of more than $50 or $75, as the case may be, or

. . . . . . . . .

"(b) *Amount of deductions.* The amount to be deducted shall be equal to the *benefit* or *total of benefits* payable to the

---

[6] In the Spanish opinion this footnote contains the English version of the federal rule copied above.

individual and to the wife's, child's, or husband's benefit payable to such individual's wife, child, or husband, on the basis of his wages and self-employment income, in the month in which the event specified in any of the subparagraphs of paragraph (*a*) of this section occurred." (Italics ours.)

How does this regulation affect the complainant? If Berríos had worked in his old employment until he attained 72 years, namely, in 1956, his monthly pay would exceed $75 and, therefore, he would have forfeited all the old-age social security benefits. That is why the defendant was not summoned until the claimant attained the age of 72 years, since according to the regulations *supra* no deduction is made from the benefit payments after attaining this age. In order to make a long story short, we venture to affirm that this action would not have been instituted if in September 1954 the federal legislation had not been amended in order to permit a beneficiary over 72 years of age to receive the social security benefits, even though he has other income. From the foregoing it follows that the complainant, by his conduct, actually accepted his retirement in June 1952, and that his reinstatement in the employment does not lie.[7]

Even if we held that Berríos' reinstatement in his employment were in order, there is nothing in § 19 that unavoidably requires the imposition on the employer to pay the wages that the employee failed to receive either from the date of discharge or from the filing of the complaint, or from the summoning of the defendant. It merely provides that the court shall investigate the damages caused to the employee by the discriminatory act and that judgment shall

---

[7] Act No. 100 of June 30, 1959 (Sess. Laws, p. 284; 29 L.P.R.A. Supp., § 146 *et seq.*), drawn up in terms very similar to § 19 of the Minimum Wage Act, is aimed at protecting the rights of the employee by prohibiting discrimination by reason of advanced age. It recognizes the existence of civil liability for a sum equal to twice the amount of damages caused by the act to the employee or applicant for employment, and provides that the court *may* direct the employer to reinstate the workman in his employment. It defines "advanced age" as the age between 30 and 65 years. 29 L.P.R.A. § 151.

be rendered for double the amount of the damages. Conceivably, in fixing these damages the amount of income which the workman failed to receive, namely, the element of lost profit, may be taken into consideration, but if he has obtained another employment with a substantially similar salary, or, as in the instant case, he has other income, including the social security benefits, the damages would be purely nominal. Even in those situations in which the Act expressly authorizes the reinstatement with back pay earned by the workman—§ 9(b) of Act No. 130 of May 8, 1945 (Sess. Laws, p. 406); 29 L.P.R.A. § 70(b)—we have held that this measure is remedial, not punitive, and that the employer may deduct any sum which the aggrieved workman may have received for his work from other employers. *Rivera v. Labor Relations Board*, 70 P.R.R. 5, 13 (1949). See, also, *John S. Doane* v. *Martin*, 164 F.2d 537 (C.C.A. 1, 1947); *Boston & M.R.R.* v. *Bentubo*, 160 F.2d 326 (C.C.A. 1, 1947); *Mitchell* v. *Dyess*, 180 F. Supp. 852 (Ala. 1960); and particularly, *Spilky* v. *Rein*, 11 Labor Cases 63,381 (1946); and annotations in 144 A.L.R. 401 (1943) and 133 A.L.R. 1237 (1941). *Marshall Field & Co.* v. *N.L.R.B.*, 318 U.S. 253 (1942), and *N.L.R.B.* v. *Gullett Gin Co.*, 340 U.S. 361 (1950), are not applicable since the orders to reinstate the workman by reason of discriminatory discharge or union activity clearly provided that only the amounts received by him by way of wages could be deducted from the back pay. As a matter of fact, the complainant has been receiving monthly income substantially equal to that which he would have received by way of wages from the respondent had he continued to work.

Considering *the particular facts* of the instant case, and for the reasons stated, the judgment rendered by the Superior Court, Humacao Part, on December 2, 1958, will be reversed and the complaint dismissed.

Mr. Justice Dávila concurs in the result.